James P. NORRIS

v.

ROBERTSHAW–FULTON CON-
TROLS CO.

No. 2970.

United States District Court
E. D. Tennessee, N. D.

Feb. 12, 1957.

John C. Crawford, Jr., U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

Lindsay, Young & Young, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This suit arises under Section 8 of the Selective Service and Training Act of 1940, as amended, which is contained in Title 50, U.S.C.A. Appendix, § 308.

Norris, who is the plaintiff, is a resident of Knox County, Tennessee, and the defendant, Robertshaw-Fulton Controls Company, is a Delaware corporation, domesticated in Tennessee, with plants in Knoxville.

Plaintiff commenced work for the defendant in February, 1936, and became an apprentice machinist on August 11, 1941. He is a member of the International Association of Machinists, Lodge No. 555, and is presently employed by the defendant as a journeyman machinist.

On March 20, 1944, plaintiff advised defendant of his intention to enlist in the armed forces of the United States. At that time he had completed 6,360 hours of work for the defendant as an apprentice machinist, and lacked 1,640 hours of work as an apprentice before becoming a qualified journeyman machinist. The required number of hours of that of an apprentice machinist before

becoming a journeyman machinist was 8,000 hours.

He entered the United States Navy as a volunteer on March 24, 1944. He received an honorable discharge from the Navy on December 17, 1945, and within 30 days thereafter, namely, on December 31, 1945, he was restored to his former position with the defendant as an apprentice, pursuant to an application filed with the defendant. He completed his 1,640 hours of apprenticeship training on February 19, 1947. On that date he was employed by the defendant as a journeyman machinist and given a seniority date of February 19, 1947. This date was a much later date than that given their journeyman machinists who started their apprenticeship training with the defendant at the same time or later than that of the plaintiff. If plaintiff had remained in the employment of the defendant, he would have completed his apprenticeship hours on October 11, 1944, and would have been assigned seniority as a journeyman machinist as of October 11, 1944.

All of the foregoing facts are stipulated by the parties in writing, which is filed as a part of the record.

The applicable parts of the union contract between the International Association of Machinists, Lodge No. 555, and the defendant, is as follows:

"C. Any employee who leaves the service of the company in accordance with the above will retain seniority with the company and accumulate seniority while on leave of absence."

It is to be noted that plaintiff in this suit is not asking for a different classification, but is asking that his seniority be fixed by giving him credit for the time that he served in the United States Navy, which was approximately one year, eight months, and three weeks.

Plaintiff is not asking for a money judgment.

The company insists that the seniority date fixed for plaintiff as a journeyman machinist, of February 19, 1947, is the correct date, and relies upon the following, which it says was included in the union contract:

"An apprentice does not accumulate any seniority during his apprenticeship."

Defendant says further, that under the practice or custom of the company, which was well known to the employees, that plaintiff did not have any seniority as an apprentice machinist at the time he entered the Navy, and that he did not have any assurance that he would be employed as a journeyman machinist upon his completion of the 8,000 hours provided for in the regulations of the company relating to apprentice machinists; that the company had the right, and sometimes exercised such rights, to employ journeyman machinists from the groups other than the ones who worked for the defendant, even though apprentice machinists who had served their required time to become journeyman machinists were available.

In addition to the claim that plaintiff had no seniority as a result of the hours that he worked as an apprentice machinist before entering the Navy, defendant says that plaintiff is not entitled to relief in this suit by reason of laches. In that connection, defendant claims that plaintiff waited from the day he was discharged from the service, to-wit, December 17, 1945, until April 20, 1946, before he filed his complaint, and by reason of this long lapse of time, the doctrine of laches applies and that the complaint should be dismissed.

The issues to be decided by the Court, as set forth in the pretrial orders, as amended, are:

Is the plaintiff entitled to seniority as a journeyman machinist, dating from the time he would have completed his apprenticeship had he not entered the military service?

Is plaintiff's claim barred by laches?

In construing Section 308 of Title 50, Appendix, the Supreme Court said in the case of Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, at

pages 284–285, 66 S.Ct. 1105, at page 1111, 90 L.Ed. 1230:

"Thus he [employee] does not step back on the seniority escalator at the point he steps off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

In the same case, 328 U.S. at page 285, 66 S.Ct. at page 1111, the court said:

"As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed forces is counted as service in the plant, so that he does not lose ground by reason of his absence."

On the question of whether or not the rights of the veteran are circumvented by reason of provisions in the contract between the union and the company, the Court said, 328 U.S. at page 285, 66 S.Ct. at page 1111:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. See Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587. And no practice of employers or agreement between employers and unions can cut down the service adjustment benefits which Congress has secured for veterans under the Act."

In a recent case of Mann v. Crowell-Collier Publishing Co., 6 Cir., 239 F.2d 699, 701, the court reaffirmed the escalator doctrine as also reaffirmed by the Supreme Court in the case. The court also said:

"Selective Training and Service Act of 1940 provided in terms that the veteran should be restored to his former position after termination of his military service in such manner as to give him such status in his employment as he would have

enjoyed if he had remained in such employment continuously from the time he entered the armed forces until the time of his restoration to his former employment." See, also, Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Wallace Corporation v. National Labor Relations Board, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216.

The proof shows that plaintiff, at the time he entered the service, was a trusted and competent employee of the defendant in the capacity of an apprentice machinist, that he worked continuously while in the service as a machinist, thus improving his qualifications for the work to which he was assigned after he was discharged from the Navy and returned to work for the defendant.

At the time plaintiff entered the Navy the defendant was short of journeyman machinists and apprentice machinists, by reason of the war, and defendant admits that those who were working for the defendant at these trades were working on a seven-day week schedule. It was the practice of the defendant, though not mandatory according to the proof, that apprentice machinists who served their time for the defendant be employed by the defendant as journeyman machinists when they served the required 8,000 hours.

If plaintiff had not entered the Navy, he would have become a journeyman machinist for the defendant at least one year, eight months, and three weeks earlier than he did become a journeyman machinist.

Under the holdings in Fishgold v. Sullivan Drydock & Repair Corporation, supra, and the latest holding of the Supreme Court of the United States in the case of Diehl v. Lehigh Valley Railroad Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749, plaintiff is entitled to have his seniority as a journeyman machinist made retroactive.

This means that plaintiff is entitled to credit for the time that he served

in the Navy which, as indicated, was approximately one year, eight months, and three weeks, but in view of the fact that the parties have stipulated that if he had been retained as an employee by the defendant, that he would have received his seniority as a journeyman machinist as of October 11, 1944.

That is the date to which his seniority will be made retroactive.

Counsel for the defendant has relied on, among others, the recent case of Poore v. Louisville & N. R. Co., 5 Cir., 235 F.2d 687. The Court examined that case during the recess and is of the opinion that the facts are distinguishable from the facts in the present case, and that the holding in that case does not run counter to the holding in the present case. In that case, the employee had not finished his required number of hours in the work in which he was engaged at the time he entered the service and at the time the case was before the court for decision.

The court, in addition to giving that reason as a basis for his decision, stated that there was not an automatic provision in the contract between the railroad and the union which required advancement of the employee into a new craft after he had served the required number of hours.

In the present case, subsequent events have shown that plaintiff completed the required hours of an apprentice machinist and was actually made a journeyman machinist in 1947.

As previously indicated, he is only asking that his seniority be made retroactive so that he will be given credit for the time spent in the service.

 It is the opinion of the Court, as previously indicated, that he is entitled to this relief. The defense of laches is not good in this case for the reason that plaintiff diligently pursued his claim within 30 days from his discharge from the Navy until the very minute of this decision. The Court has not observed a more persevering litigant than plaintiff.

Shortly after his discharge from the service, within a period of 30 to 60 days at the most, he felt that he was entitled to the time spent in the Navy in accelerating his seniority, and took the question up with his union representatives and with the representatives of his employer. These representatives took a contrary view. Therefore, he consulted with the Assistant United States District Attorney here in Knoxville, Mr. Meek, and Mr. Meek told him that was a matter for Mr. Powell, that Mr. Powell specialized in questions of that character. Whereupon, he had several conferences with Mr. Powell.

When Mr. Powell left the District Attorney's office, plaintiff took the matter up with the local American Legion Post, a young lady, who apparently was an attorney, and a Mr. Caldwell—in fact, he discussed the matter with two Mr. Caldwells. He again contacted the District Attorney's office, who referred the matter to the Labor Department at Nashville. As a result of this reference, the present suit was started.

Factors to be considered with respect to the defense of laches, which is an equitable doctrine: Whether defendant has been prejudiced by the delay, whether evidence once available to the defendant is no longer available, and whether there was a defense had suit been brought but is no longer capable of being established. A glance at these factors convinces the Court that the defense of laches is not tenable.

Let formal findings of facts with these findings be presented in accordance with the views herein expressed.