Roy L. BOSTICK, Petitioner,

v.

GENERAL MOTORS CORPORATION, Respondent.

Civ. A. No. 16385.

United States District Court
E. D. Michigan, S. D.

March 31, 1958.

Fred W. Kaess, U. S. Atty., Horace J. Rodgers, Asst. U. S. Atty., Detroit, Mich., for petitioner.

Henry M. Hogan, Detroit, Mich., Harry S. Benjamin, Jr., Edward J. McGratty, Jr., K. Douglas Mann, Detroit, Mich., of counsel, for respondent.

LEVIN, District Judge.

The Court has before it a petition of Roy L. Bostick, a veteran, by the United States Attorney for the Eastern District of Michigan, to compel respondent, General Motors Corporation, to readjust

his seniority date in conformance with the provisions of Section 8 of the Selective Service and Training Act of 1940, 54 Stat. 890, as amended, 50 U.S.C.A.Appendix, § 308(c)†, the pertinent part of which reads as follows:

"Any person who is restored to a position in accordance with provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority * * *."

Petitioner was employed as a Keller machine trainee at respondent's Fisher Body Division in Detroit, from July 1, 1942, until he was inducted into the United States Coast Guard on August 20, 1943. On April 3, 1946, he received an honorable discharge from the service. He made a timely application for reemployment and was restored to his position as trainee on September 5, 1946. On September 19, 1951, he completed his five-year training program to qualify him for the position of Keller machine operator, a skilled trade classification. Respondent thereupon computed and established petitioner's seniority date for the purpose of layoff and rehire from the skilled classification as February 8, 1947. This seniority date was computed by crediting petitioner with fifty per cent of the time elapsed from the date of entry into training for the skilled classification to the date of the completion of the said training, including the time he spent in the military service. This computation was made in accordance with Paragraph 127 of a collective bargaining agreement entered into between the re-

spondent and the Union, UAW-CIO, on May 29, 1948, which was in effect at the time the petitioner completed his training. Paragraph 127 provided as follows:

"* * * For the purpose of layoff and rehire from the skilled group, the seniority status of such employees in the skilled classifications to which assigned will be computed by crediting them with 50% of the time elapsed since the date of entry into that or related skilled classifications. The employee will retain his established plant seniority date for seniority purposes other than for its applicability in skilled trades group."[1]

In contrast to the seniority date of February 8, 1947, computed for petitioner, a nonveteran who began his training some four months prior to petitioner, received a seniority date of August 3, 1945.

Petitioner first sought to adjust his seniority status early in 1948 while he was still a trainee. On January 3, 1951, the United States Attorney of this district declined prosecution of petitioner's claim. After petitioner's seniority date was established, he again sought to have this date adjusted and filed a grievance complaint with his Union. The Union attempted to secure redress for the petitioner in the latter part of 1952 and again early in 1953, but was unsuccessful. The Union then referred petitioner to the Bureau of Veterans Reemployment Rights. The Bureau made representations in his behalf on March 24, 1953 and on subsequent occasions, and finally on September 17, 1953, it was advised by respondent that it would not adjust petitioner's seniority status. On September 22, 1953, at the request of the petitioner,

---

† Now 50 U.S.C.A.Appendix, § 459.

1. Subsequent to the fixing of petitioner's seniority status, Paragraph 127 was amended to give veterans full credit for their military service. The amendment became effective November 30, 1951. It was not retroactive and therefore did not apply to this petitioner. The amendment provided:
"*Seniority Status of Reclassified Employees Whose Training is Interrupted by Service in the Armed Forces.*

"An employee in training under Paragraphs 127, 128 and 130 who enters active service in the Armed Forces while engaged in such training and who subsequently completes such training and is reclassified in the skilled trades classification, shall be given full credit for the period of service in the Armed Forces in establishing his seniority date in his skilled trades classification."

the Bureau referred his claim to the United States Attorney's office. On January 12, 1954, this office again declined to take any action and both petitioner and respondent were so notified.

On March 14, 1955, the Supreme Court of the United States decided Diehl v. Lehigh Valley Railroad Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749, which involved a construction of the statute in controversy here. In June of 1955 the Bureau of Veterans Reemployment Rights reviewed petitioner's file in light of the Diehl decision, and on November 14, 1956, respondent was notified of the reopening of petitioner's claim by the United States Attorney. After many conferences, respondent notified the United States Attorney on January 18, 1957, that it still considered petitioner's claim without merit. Whereupon this suit was instituted on January 29, 1957.

It is the petitioner's contention that the Selective Service and Training Act requires that he should not suffer loss in seniority time because of his military service, and that his security status be computed in such manner as to place him in the same position as if he had continued in the employment of the respondent during the time spent in service.

Respondent maintains that the suit is barred by laches and that in any event the computation of petitioner's seniority under Paragraph 127 of the collective bargaining agreement does not violate the provisions of Section 308(c) of the Selective Service and Training Act.

 This is an action in equity with no time limitation prescribed by the Selective Service and Training Act within which suit must be instituted. In the absence of a time limit imposed by Congress, Federal courts must apply State statutes of limitation. 28 U.S.C. § 1652. There is no State of Michigan statute of limitations barring this action. Tilley v. Brady, 323 Mich. 547, 36 N.W.2d 140.

" * * * equity, in the absence of any statute of limitations made applicable to equity suits, has provided its own rule of limitations

through the doctrine of laches, the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754.

" * * * laches is not, like limitation, a mere matter of time; but principally a question of the inequity * * * founded upon some change in the condition or relations of the property or the parties." Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743.

Petitioner, therefore, is precluded from securing the relief sought only if he has been guilty of unexcused delay and this delay, if relief is granted, would result in prejudice to respondent. I find that there has been no unexcused delay by petitioner. He attempted continuously to prevail upon the proper governmental agencies to institute this action. A great deal of time was consumed by correspondence between these governmental agencies and the respondent. Delay in the institution of the action by the Government is not to be attributed to petitioner. While it is true that petitioner could have instituted the action with private counsel, it was not incumbent upon him to do so.

 Nor will respondent be prejudiced if relief is granted to petitioner. The factors to be considered to determine whether such inequity or prejudice exists are:

"Whether defendant has been prejudiced by the delay, whether evidence once available to the defendant is no longer available, and whether there was a defense had suit been brought but is no longer capable of being established." Norris v. Robertshaw-Fulton Controls Co., D.C., 150 F.Supp. 431, 434. See, also Tilley v. Brady, 323 Mich. 547, 36 N.W. 2d 140.

 There is no issue raised that either evidence or a defense once available can no longer be established. How-

ever, respondent asserts that granting the relief requested by petitioner would result in prejudice. Such prejudice, respondent contends, would stem from the fact that if petitioner were upheld, the seniority of its other employees would be adversely affected and such a result "could be productive of injury prejudicial to respondent's labor relations and industrial peace to a degree impossible to calculate." It is apparent that if the relief here requested is granted, petitioner will replace some employees on the seniority scale; but any adverse effect that may result to such employees is not prejudice to the respondent. Nor is it warranted to assume, if the relief sought is granted, that the Union, through its collective bargaining representatives, will take punitive action against respondent. Indeed the facts show that the Union initially intervened on behalf of the petitioner in his attempt to secure an adjustment of his seniority status. Moreover, the anticipated conduct of third parties not induced by, or consequential to, the acts of respondent is not the prejudice contemplated by the doctrine of laches. Defendant has not in any way changed his position in reliance on petitioner's conduct. If petitioner's claim is recognized it will not result in prejudice to the defendant.

Since the petitioner is not barred by laches, I now turn to a consideration of the merits. The Selective Service and Training Act was enacted to protect the veteran. The Act provides that he shall be restored to his employment without loss of seniority and shall be considered as having been on furlough or leave of absence during the time he served his country in the Armed Forces. Upon restoration to his employment "he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230.

Respondent, however, contends that where an employee is required to undergo a prescribed course of training in order to qualify to perform the duties of a particular skilled trade classification, time spent in military service cannot serve as a substitution for the required course of training. Petitioner here does not assert that the time that he spent in the Armed Forces serves as a substitute for the required course of training. He did serve the required time in the training program and merely contends that his seniority date be determined in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the Armed Forces until the time of his restoration to such employment. Diehl v. Lehigh Valley Railroad Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749; Oakley v. Louisville & Nashville Railroad Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87; Mann v. Crowell-Collier Publishing Company, 6 Cir., 239 F.2d 699; Moe v. Eastern Air Lines, Inc., 5 Cir., 246 F.2d 215.

Respondent also contends that the determination of the seniority status of employees is a matter of contract between the employer and the union and that such contract, if it treats all employees both veterans and nonveterans alike, does not impair the rights secured to a veteran by Section 308(c) of the Selective Service and Training Act, even though it does not allow the veteran credit for military service. This contention is devoid of merit. In Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, the Supreme Court pointed out that:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. See Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587. And no practice of employers or agreements between employers

and unions can cut down the service adjustment benefits which Congress has secured the veterans under the Act."

If petitioner had not entered the military service, he would have completed his training program approximately five years after his entry into training on July 1, 1942. He would, then, under the 1948 bargaining agreement, have received a seniority date for the skilled classification midway between July 1, 1942 and the date of completion of his training. Instead, respondent fixed his seniority date for the skilled classification as February 8, 1947. This determination was not in accordance with the rights secured to the petitioner by the Selective Service and Training Act. The Act requires that his military service be counted as service with respondent for the purpose of determining his seniority. Diehl v. Lehigh Valley Railroad Co., supra; Oakley v. Louisville & Nashville Railroad Co., supra; Mann v. Crowell-Collier Publishing Company; Moe v. Eastern Air Lines, Inc., supra.

An order that respondent fix petitioner's seniority status in conformance with this opinion may be submitted for signature.