Gerald J. PALMQUIST, Plaintiff,

v.

BUHL SONS COMPANY, Defendant.

Allen DE ROSE, Plaintiff,

v.

BUHL SONS COMPANY, Defendant.

Nos. 18311, 18312.

United States District Court
E. D. Michigan, S. D.

Nov. 5, 1959.

Willis Ward, Asst. U. S. Atty., Detroit, Mich., for plaintiffs.

Wurzer, Higgins & Starrs, Detroit, Mich., for defendant.

O'SULLIVAN, District Judge.

These cases were consolidated. The Court's opinion, findings and conclusions will apply to both cases.

Preliminarily, the Court will review undisputed facts, and recital thereof will constitute findings of fact, in addition to the specific findings on matters that might be considered as being in dispute.

Plaintiffs, Gerald J. Palmquist, and Allen DeRose, were, and are, employees of defendant, Buhl Sons Company. While so employed, both entered the armed forces. These suits involve claimed breach by defendant of plaintiffs' rights as veterans returning to employment.

Buhl Sons Company is primarily, but not exclusively, a wholesale hardware concern. It has two general departments, the warehouse department, where goods offered for sale are kept, sorted and made available for sale through the office department, and the office department where the general office administration, sales department, taking of orders, and like activities are carried on. These divisions have various classifications of activities. Employees in the warehouse are classified as order clerks, checkers, warehousemen, and others. Order clerks select goods from the warehouse required to fill orders. Checkers check the goods that are being made available to fill the orders. In the office department there is a classification known as order board. Employees on the order board take orders and direct the filling of them through the warehouse. Also, in the office department are sales promotion men, salesmen and oth-

ers. Generally, wages in the office division are higher than those paid in the warehouse.

Employees in both departments are represented by Local Union No. 772, UAW–CIO. At all times involved here, there existed a contract between defendant and the aforesaid local union.

Both plaintiffs became employees in the warehouse department of defendant in 1949. They both entered the army in 1952, both being then employed as checkers. Both returned from service in 1954 and applied for re-employment by defendant. Their service experience and time of applying for re-employment entitled them to all rights provided for returning veterans by the Universal Military Training and Service Act, 65 Stat. 86 (1951, 50 U.S.C.A.Appendix, § 459, as amended). Plaintiff Palmquist was re-employed as a general warehouseman, an equivalent position to his pre-service job as checker. Plaintiff DeRose was re-employed in his pre-service job of checker.

While plaintiffs were in the service, other employees in the warehouse, presumably in the classification of checkers, whose plantwide seniority was less than plaintiffs (crediting plaintiffs with their service time) were promoted to the order board on the office side of defendant. Neither plaintiff objected to his re-employment as checker and general warehouseman, respectively.

Plaintiffs continued in said positions until both were promoted to the order board in 1955. They continued in such positions until May 27, 1957. On that date, because of the necessity for defendant to re-employ other returning veterans who had left for service as employees of the order board, defendant was required to reduce the number of employees in the order board classification. Taking into account the time spent in service by all of the then employees of the order board and the then returning veterans, the plaintiffs had the least seniority on the order board. There were, however, at least two of these employees whose plantwide seniority was

less than the plaintiffs'. They had, however, gained greater seniority on the order board by having been promoted there while plaintiffs were in service. Plaintiffs claim that these two with less plantwide seniority than plaintiffs should have been the ones demoted, leaving plaintiffs on the order board.

Following their 1957 demotion to positions as checkers, plaintiffs continued in such classification until in 1958, when both were again promoted to the office department in positions which they concede are appropriate to their seniority status.

In this case, the plaintiffs seek to recover damages represented by the difference between the wages received by them from the time of their re-employment until the time of the respective promotions to the order board and the pay that would have been received by them had they been placed on the order board when re-employed upon their return from service. They also seek to recover the difference in pay between what they received as checkers from the time of the demotion on May 27, 1957, until they were later promoted and the pay they would have received during that period of time had they continued on the order board instead of being demoted.

Decision here depends upon whether, under the evidence, this Court should find that had the plaintiffs not been in the service they would, during that time, have been promoted to the order board. If so, they were entitled to be re-employed in that classification and, when demotions were necessary in 1957, their seniority on the order board would have prevented their being demoted.

The contract between defendant and the Union provides in Section 9, Article V, under the catch line "New Classifications and Promotions" as follows:

"When new classifications are created or vacancies in established classifications occur, the oldest employee on the seniority list shall be given preference in filling such vacancy or new classification so far as practicable and consistent with proper ability to perform the services required. All vacancies or new classifications shall be posted by the company on all Bulletin Boards for three (3) working days before being filled.

"Employees promoted to higher paid classifications or a classification on which they have had no previous experience shall be given a three (3) day period to demonstrate their ability.

"No new employee shall be hired by the company in any classification until all employees on the seniority list have been given the opportunity to fill the position."

In Section 5 of Article VI of the same contract, under the catch line "Military Service" the contract provides:

"An employee who either volunteers, is drafted, or is called to active service and who serves in the Armed Forces of the United States shall not lose his seniority status due to such service. Upon his return to the regular active employment of the company, he shall have reinstated his full accumulated seniority, including the period spent in such Armed Forces, and shall be put back into his original department provided (i) that he is honorably discharged and (ii) is physically capable of working and (iii) reports for work within ninety (90) days from the date of discharge. Cases of a special nature with respect to which these provisions cannot or should not be put into effect shall be decided upon in joint session between management and the Union Bargaining Committee."

Under Section 7 of Article V of the contract, under the catch line "Plant-Wide Seniority" it was provided:

"In the event that an employee on the seniority list has been or is about to be laid off and a position should be available or should.be held by an employee with lesser senior-

ity in any other classification that the employee may be capable of handling, such senior employee shall be given three (3) days to demonstrate his capability of satisfactory performance of the duties of such position. If, at the end of this period, said senior employee demonstrates his capability of performing such position, it shall be made available to him."

It was conceded upon the trial that the handling of the plaintiffs at the time of their re-employment and at the time of their demotion from the order board was in conformity with the terms of the Union contract. It was likewise shown that the procedure of re-employing these veterans in the department where they were at the time of entering the service was in accordance with negotiations between the company and the Union representative of its employees. Plaintiffs correctly contend, however, that neither the Union contract nor arrangements between the Union and the company can override the statutory requirements of the Universal Military Training and Service Act.

The plaintiffs contend that under the practice and custom at defendant's plant during the time involved, plant-wide seniority prevailed in all matters of promotion—at least, plant-wide seniority controlled in providing opportunity to demonstrate ability to fill any vacancy in a position of higher classification and pay. They contend that they, but for the circumstances of their having been away in the service, would have been, during that period of time, afforded opportunity to demonstrate their ability to do work on the order board and would necessarily have been so promoted.

During the time the plaintiffs were in service, other men of less seniority were promoted from checker to positions on the order board.

During some of the time that plaintiffs were employed as checkers there were two classifications of checkers, permanent checkers and transient checkers. Permanent checkers were, for the most part, employees who had failed to demonstrate ability required for work on the order board or who, by their own decision, wished to remain as checkers. Transient checkers were employees considered potential material for promotion to the order board. Plaintiffs were the latter type of employee. The classifications of permanent and transient checkers, however, were abolished on November 13, 1953. Plaintiffs testified that in all cases where a promotion was made from the position of transient checker to the order board, the checker having the greatest seniority was always promoted. They were, to some extent, supported by other witnesses in this claim. The proofs, however, sustained the contention of the defendant that over the period of years from the time the plaintiffs were employed by the company to the time of this lawsuit, there were many instances where employees were promoted from checker to the order board who had less seniority than checkers, both permanent and transient, who were not promoted. Defense witnesses testified that while it was the desire of the company always to promote older employees, that in every promotion the question of ability and qualifications of the employee for the higher position was considered. The employment records of some ninety-one employees who had been employed in these respective classifications, to wit: checkers and order board, were received in evidence. A tabulation from these records discloses that there were a great many instances in which strict seniority was not observed in promotions from checker to order board.

The evidence showed that in the case of promotion from the classification of checker to order board, vacancies on the order board and opportunity to apply to fill them were not posted, but the management usually sent for and interviewed persons being considered for promotion. The section of the contract concerning promotions provides that the oldest employees on the seniority list were to be given preference "so far as practicable and consistent with proper ability to per-

form the services required." Witnesses for the defendant testified that ability was always taken into consideration in making promotions, but conceded that where there was a parity of ability between applicants, seniority would control.

At the time plaintiffs were demoted from the order board on May 27, 1957, both were given opportunity for employment within the office department on jobs with pay equal to the order board. Both refused these because they did not like these jobs as compared to work on the order board. These offered jobs were sales promotional positions which involved some traveling. Plaintiffs did not desire to do so, although the evidence showed that the jobs with the greatest potential for earnings were in sales. Plaintiffs felt that the mileage allowance for use of their own cars was too low. Neither sought employment in other positions within the office department. Plaintiff DeRose said that he did not make any effort to obtain other employment in the office because he wanted the order board job and did not feel that the demotion he was then taking would continue for two years. It was shown that not all promotions to the order board were from the classification of checkers but that other employees within the warehouse were promoted to the order board, always with ability and proficiency considered.

Plaintiffs contend that promotion from checker to the order board was automatic for an employee with the greatest seniority as a checker, but to some extent qualified this position to claim that opportunity for such promotion was automatic. They argue that inasmuch as in 1955 plaintiffs were promoted to the order board and then demonstrated ability to handle such job, it must be assumed that except for their being away, plaintiffs would have been given opportunity for the job during that time and would have been promoted in keeping with their seniority status.

This Court is of the opinion that from a fair review of all of the evidence it cannot be said that a finding should be made that plaintiffs, had they not been in service, would necessarily have been promoted from positions of checkers to the order board on the occasions when such promotions were made during their absence. The evidence discloses that in 1957 when they were demoted from the order board back to checkers, they had the least seniority in that department and for that reason they were demoted. Such demotion was not violative of the union contract or the statute providing veterans with preference.

### Findings of Fact

1) During the time plaintiffs were employed by defendant company, promotions from various classifications to higher classifications were not automatically controlled by plant-wide seniority.

2) Under the union contract and the practice employed by defendant, ability of the employee was always considered in the matter of promotions and determination of whether a particular employee had the necessary ability to handle a job in a higher classification was a matter within the judgment and managerial discretion of defendant company.

3) Neither from the practice of defendant company nor from terms of the contract between the company and the Union can it be found that these plaintiffs would necessarily have been promoted from the position of checker to that of order board during the period they were in the service had it not been for their being in the service.

4) At the time plaintiffs were re-hired, one as a checker and one as a general warehouseman, there were employees on the order board who had less plant-wide seniority than the plaintiffs.

5) At the time plaintiffs were demoted from the order board there were then employed on the order board employees who had less plant-wide seniority than the plaintiffs.

6) At the time plaintiffs were demoted from the order board all of the employees remaining employed on the order board had greater seniority on the order board than the plaintiffs.

7) The necessity for the demotion of the plaintiffs on May 27, 1957, was because at about that time there had returned from service other employees who had greater seniority than the plaintiffs on the order board and there were not sufficient positions available on the order board to retain thereon the plaintiffs and all of the other employees of the order board, including those just returned from service who had higher seniority on the order board than plaintiffs.

8) Positions on the order board were not characterized in the union contract under specific classification as "order board" but were in a general classification of "office" employees.

## Conclusions of Law

The Court is of the opinion that the rights of the parties to this lawsuit are controlled by two decisions, one of the Sixth Circuit Court of Appeals and the other a decision of the United States Supreme Court. In Raulins v. Memphis Union Station Co., 6 Cir., 168 F.2d 466, 468, the court was dealing with actions by three returning veterans who at the time of their respective entries into the armed service were employed as electrician's helpers. Two of the plaintiffs in that case, when returned from service were re-hired as electrician's helpers, later promoted to electricians and subsequently reduced to positions as electrician's helpers. The status of the other of the plaintiffs in the case was different and it is not important here to discuss it. The evidence showed that while the two plaintiffs in question were away in service, other men who were not in the service were promoted from electrician's helpers to electricians. These latter had lesser overall seniority than the plaintiffs, but were retained as electricians while plaintiffs were later demoted back to the position of electrician's helper. The collective bargaining agreement in that case provided:

"Seniority of employees in each craft shall be confined to the seniority subdivision in which employed * * *".

Plaintiffs, however, there contended that by custom and practice electrician's helpers were always promoted to positions of electricians by virtue of seniority.

"Appellants claim that if they had remained in the employ of the Station Company instead of inducted into service they would have received the promotions to electrician in preference to Turner and Black, and that under the above provisions of the Act they are entitled to this priority over Turner and Black upon their re-employment by the Station Company." 168 F.2d at page 468.

The District Court had held:

" * * * while the electrician-helper, oldest in point of service, was usually given preference in filling vacancies on the electrician roster, other things, particularly qualifications, required consideration; and that while the Act guaranteed them their seniority in the subdivision of electrical workers, it did not guarantee them promotion to vacancies occurring in the sub-division of electricians." 168 F.2d at page 469.

The Court of Appeals, holding for the defendant, made reference to the collective bargaining agreement and said, 168 F.2d at page 469:

"The Collective Bargaining Agreement does not make promotion from electrician-helper to electrician in case of vacancy an automatic one. It plainly provides application on the part of the electrician-helper, proof of his qualification for the promotion by actual trial, and for a return to his former position as electrician-helper with full seniority rights if he fails to qualify after a reasonable trial. Although there is a strong probability that the appellants would have applied for promotion to the vacancies and would have been qualified, yet such promotion was not a matter of right or of certainty merely because of seniority."

The last sentence of the above quote is especially applicable here. It is very like-

ly that had these plaintiffs remained with Buhl Sons Company instead of being in service, they would have applied for, and would have been given, an opportunity to seek promotion from checker to order board. It is also quite likely that they would have qualified. Such considerations do not, however, make it necessary or appropriate to find that in all events they would have been thus promoted.

This Court feels that the case of McKinney v. Missouri-Kansas-Texas Railroad Co., 357 U.S. 265, 78 S.Ct. 1222, 1224, 2 L.Ed.2d 1305, is dispositive of the contentions made by the plaintiffs here. A careful review of that case will disclose that it presented a factual situation very much like the one at issue. The plaintiff McKinney was employed by the mentioned railroad. His employer had a contract with a union. The union contract divided the employees into three groups with seniority defined within each group. It provided that when new positions were available or vacancies occurred in existing positions, such positions would be bulletined by the employer and employees could bid therefor. The contract provided that promotions would be confined to the group, but also provided an exception to promotions being within the group as follows:

"* * * with the exception that employees on positions enumerated in group two (2) will be given preference over nonemployees in the assignment to positions in group one (1), based upon fitness and ability * * *"

Plaintiff in that case at the time he entered service was an employee in group two. The union contract also provided:

"An employe returning after leave of absence may return to former position or may, upon return * * * exercise seniority rights to any position bulletined during such absence."

At the time McKinney left for the service he was employed in group two, as a relief clerk chief caller. While he was still in the armed forces, the railroad bulletined two group one positions, and they were filled by persons who had been nonemployees of the railroad. Shortly thereafter McKinney returned from military service and applied for re-employment. He was placed in group one in a position of assistant cashier with a seniority date there of October 7, 1952, the date of commencement of his compensation in that position. Later this position was abolished and he was demoted back to a group two position. The employee McKinney claimed that because, while he was in the armed forces, a group one position had been bulletined for which he might have made application, his seniority position in group one should be given to him as of the date when the position had been bulletined and filled by nonemployees. He claimed therefore that he should not have been demoted but should have been given a seniority status in group one, the same as if he had been promoted to that position at the time the position was bulletined while he was in service. The McKinney case, therefore, involves a situation similar to the case at bar. In the McKinney case the Supreme Court pointed out that, under the union contract, while employees in group two were entitled to preference in filling vacancies in group one, the promotions were not automatic but based "upon fitness and ability". Referring to the veterans' statute involved, the Court said:

"Section 9(c) (1) states that he shall be restored 'without loss of seniority.' In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1110–1111, 90 L.Ed. 1230, and Oakley v. Louisville & N. R. Co., 338 U.S. 278, 283, 70 S.Ct. 119, 122, 94 L.Ed. 87, the same provision in an earlier Act was interpreted to mean that a returning veteran does not step back at the exact point he left his employment, but rather is entitled to a 'position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian

employment.' 338 U.S. at page 283, 70 S.Ct. at page 122. This interpretation is now embodied in § 9(c) (2) of the present Act.

"However, § 9(c) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section 9(c) does not assure him that the past with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.

"Thus, on application for re-employment, a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer. * * * Promotion to a group 1 position from a group 2, in which petitioner had formerly been employed, is not dependent simply on seniority. Under Rule 1(3) (A) of the collective bargaining agreement it is dependent on fitness and ability and the exercise of a discriminating managerial choice. * * * Petitioner was not entitled to a group 1 position simply because in his absence it had been bulletined, and if he had then been employed he might have applied for it, and respondent might have found that he possessed the requisite fitness and ability."

In the McKinney case, the employee complained of dismissal of his complaint on motion as depriving him of an opportunity to prove that by custom and practice under the collective bargaining agreement he would necessarily have been assigned to the group one position of bill clerk or assistant cashier, had he remained continuously in respondent's employ. The Supreme Court, while affirming the lower court, gave McKinney leave to amend his complaint to allege, and prove if such was a fact, that the practice he claimed, existed. In this case, the plaintiffs have relied upon a claim of such custom and practice, and offered proofs on such claim. This Court has found as a fact that such was not the absolute custom and practice in defendant company, but that ability and fitness had always been considered in the matter of promotions, and pointed out that the proofs showed that promotions from checker to order board were not, in all cases, based upon seniority.

### Conclusion

A judgment of no cause of action in conformity with this opinion may be presented for signature.