306 F.2d 870
 Donald I. TILTON, Appellant,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Appellee,
Wilfred L. BECK, Jr., Appellant,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Appellee,
Guy H. McCLEARN, Jr., Appellant,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Appellee.
 Nos. 16814-16816.
 United States Court of Appeals Eighth Circuit.
 August 17, 1962.
 
 Harry M. Leet, Atty., Dept. of Labor, Washington, D. C., for appellants; William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., D. Jeff Lance, U. S. Atty., St. Louis, Mo., John G. Laughlin, Dept. of Justice, Joel A. Harmatz, Atty., Dept. of Labor, Washington, D. C., on the brief.
 R. W. Yost, St. Louis, Mo., for appellee; M. M. Hennelly and A. D. Churchill, St. Louis, Mo., on the brief.
 Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.
 BLACKMUN, Circuit Judge.
 
 
 1
 These are separate actions instituted under § 9 of the Universal Military Training and Service Act, as amended, 50 U.S.C.Appendix § 459.[1] The three plaintiffs, employees of Missouri Pacific Railroad Company, were each promptly reinstated in railroad employment following satisfactory completion of a period of military service. By these suits, however, the plaintiffs, represented by government counsel as authorized by § 9(d) of the Act, now seek to compel the railroad to grant them the higher seniority which they allegedly would have attained had military service not interrupted their civilian employment.
 
 
 2
 The actions were consolidated for trial. The district court held that the plaintiffs were not entitled to the relief they sought. It entered judgment for the defendant in each case.
 
 
 3
 The facts of the three cases are parallel. For the most part they are stipulated and, in any event, the trial court's findings of fact are not challenged here.
 
 
 4
 World War II occasioned a shortage of qualified carmen. In an attempt to cope with this situation the railroad and the bargaining representative, Brotherhood Railroad Carmen of America, entered into a series of agreements.[2] The pertinent provisions of the applicable contract are set forth in the margin.[3] In general summary, it (a) provides for the advancement, under certain conditions, of carmen helpers to temporary carman status; (b) specifies that selection of helpers so to be advanced shall be made as the master mechanic or shop superintendent and the union's local committee agree; (c) calls for a chronological listing of men so upgraded; (d) denies that this dated listing connotes seniority; (e) specifies that any reduction in the force shall be in reverse chronological order; (f) provides for a helper's retention of his helper's seniority during the period of his temporary upgrading; (g) recognizes carman qualification upon a helper's completion of 1040 days of carman service; (h) requires the employee then to select either a carman's status and seniority date as of that time (coupled with a relinquishment of his helper's seniority) or a return to a helper's status; and (i) preserves any temporary upgraded status of a helper who has entered military service.
 
 
 5
 The pertinent portions of § 9 of the Act are also reproduced in the margin.[4] They provide that one who has left his work with a private employer to enter military service and who makes timely application for reinstatement after the completion of his service shall, if still qualified, be restored "to such position or to a position of like seniority, status, and pay", shall be considered as having been on leave of absence during the service period, "shall be so restored without loss of seniority", and shall not be discharged from his position without cause for a year, and that it was the intent of Congress that he should be so restored "as to give him such status * * * as he would have enjoyed if he had continued in such employment continuously".
 
 
 6
 Each of the three plaintiffs here (a) was originally employed by the railroad as a carman helper, a non-temporary position; (b) was subsequently, pursuant to the bargaining agreement, upgraded to temporary carman while retaining his helper's seniority; (c) completed, before leaving for military service, only part of the 1040 day work period necessary for permanent advancement to carman; (d) returned from service to his employment as temporary carman; (e) was given the same relative position on the helpers' seniority roster which he had held before the interruption of his employment;[5] (f) then completed his 1040 days of work as temporary carman; (g) then elected to be a carman and to take carman's seniority; (h) received a carman's seniority date as of that time; and (i) thereupon relinquished his helper's seniority.
 
 
 7
 The specific progress dates for each plaintiff are:
 
 
 8
 Plaintiff Plaintiff Plaintiff
 Tilton Beck McClearn
 1. Original employment
 as carmen helper ....... 7-13-49 5-12-50 5-24-50
 2. Upgrading to temporary
 carman ................. 4-10-50 10-12-51 8-23-51
 3. Departure for military
 service ................ 10-12-50 3-1-55 10-23-51
 4. Release from military
 service ................ 12-23-51 3- 57 6- 53
 5. Reemployment after
 service ................ 1-2-52 3-11-57 6-11-53
 6. Completion of 1040
 day work requirement
 and election to
 take carman seniority .. 8-27-56 12-5-57 12-24-57
 7. Seniority date on
 carmen's roster ........ 8-28-56 12-5-57 12-25-57
 
 
 9
 Twenty-nine non-veteran helpers in Tilton's case, six in Beck's, and five in McClearn's, began work as upgraded carmen after the particular plaintiff had been so upgraded. They continued to work in that capacity while the plaintiff was in military service. These men were able to complete the 1040 day work period and to elect carman seniority before the plaintiff did so. They accomplished this, however, after the plaintiff would have reached that goal had it not been for his absence in service, had he worked whenever carman work was at hand, and had carman status been selected by him in preference to the retention of helper's status with its more advanced seniority. These non-veterans are now ahead of the plaintiffs on the carmen's seniority roster. They enjoy over the plaintiffs those advantages, such as work preference, order of layoff, and order of recall, which that seniority dictates.
 
 
 10
 The plaintiffs complain that their seniority was adversely affected by their absence in military service in that these non-veteran employees, junior on the temporarily upgraded list, are now ahead of them on the permanent list. They claim seniority status ahead of these non-veteran employees. They concede the existence of uncertainties, at the time of induction, as to ultimate qualification but they assert that, now that they have completed the work requirement, their desired priority in seniority status is no more than the situation which would have existed had their civilian employment not been interrupted by service. The plaintiffs' position here is exemplified by the following excerpt from their reply brief:
 
 
 11
 "Appellants do not contest the existence of various conditions or `uncertainties' surrounding the completion of their 1040 days actual work on the job. * * * What appellant [appellee?] fails to take into account, however, is that following their return from military service, the veterans' satisfactory performance of the work requirement and their meeting of any proficiency test, their election of promotion to journeyman, and the existence of vacancies and availability of work at all material times have, in their particular cases, resolved or eliminated all of these `uncertainties.' There is indeed nothing `automatic' about their completion of the work requirement, but once they have completed it, they are entitled to have their seniority date established, nunc pro tunc, as of the date they would have completed had they not entered military service."
 
 
 12
 We feel that this posture on the part of the plaintiffs compels a conclusion that the judgments for the defendant were correct. A review of the decided cases, however, is in order.
 
 
 13
 The landmark case is Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230. That case concerned a shipyard welder, the 1940 Act, and a bargaining agreement which provided that layoffs, where ability was fairly equal, should be controlled by length of service. That the welder's relative seniority was maintained while he was in military service is apparent from the Second Circuit's opinion in the case at 154 F.2d 785, 787. The employee, however, claimed, when he was a victim of a layoff made in the inverse order of seniority, that the 1940 Act protected him against layoffs over all non-veterans. The Supreme Court rejected this argument and held that the welder was entitled only to the maintenance of his relative seniority on the welders' roster. In so doing it articulated its escalator principle in the following frequently quoted language, pp. 284-288 of 328 U.S., p. 1110 of 66 S.Ct.:
 
 
 14
 "The Act was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind. * * He shall be `restored without loss of seniority' and be considered `as having been on furlough or leave of absence' during the period of his service for his country * * *. Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. * * * This legislation is to be liberally construed * * *. And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. * * * He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services. * * * No step-up or gain in priority can be fairly implied. * * * An employee on furlough or on leave of absence has a continuing relationship with the employer * * *. Congress recognized in the Act the existence of seniority systems and seniority rights. It sought to preserve the veteran's rights under those systems * * *."
 
 
 15
 This interpretation was reaffirmed in Trailmobile Co. v. Whirls, 1947, 331 U.S. 40, 58, 67 S.Ct. 982, 91 L.Ed. 1328, where it was said that the veteran is to be kept "in the same situation as if he had not gone to war but had remained continuously employed or had been `on furlough or leave of absence'"; in Aeronautical Industrial Dist. Lodge 727 v. Campbell, 1949, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513; and in Oakley v. Louisville & Nashville R.R. Co., 1949, 338 U.S. 278, 283, 70 S.Ct. 119, 94 L.Ed. 87.[6] Its subsequent codification in 1948 now appears as § 9(c) (2) of the present Act, 50 U.S.C.A.Appendix § 459(c) (2). This is recognized by the Supreme Court in McKinney v. Missouri-Kansas-Texas R. R. Co., 1958, 357 U.S. 265, 271, 78 S.Ct. 1222, 2 L.Ed.2d 1305. The retention of the present plaintiffs in their same relative positions on the helpers' roster after their military service was clearly in compliance with this principle.
 
 
 16
 Fishgold was followed by a number of cases concerning the application of the escalator rule to the more complex situation of the employee who, having attained seniority at one level, was, when called into service, in the process of completing a work period required for promotion to a higher level. These cases produced the following results:
 
 
 17
 (a) Where the work period was not for the development of proficiency but was for another purpose, such as the protection of the seniority of others, the claimant's time in military service was to be counted toward the period's completion. Spearmon v. Thompson, 8 Cir., 1948, 167 F.2d 626, 630-631, cert. den. 335 U.S. 822, 69 S.Ct. 44, 93 L.Ed. 376; Moe v. Eastern Air Lines, Inc., 5 Cir., 1957, 246 F.2d 215, 220-221, cert. den. 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550. Cf. Borges v. Art Steel Co., 2 Cir., 1957, 246 F.2d 735.
 
 
 18
 (b) The converse was also established, that is, where the work period was for the development of proficiency, it was not to be satisfied, in whole or in part, by military service but, instead, was to be actually worked. Altgens v. Associated Press, 5 Cir., 1951, 188 F.2d 727, 729; Lipscomb v. Tennessee Coal, Iron & R. Co., 5 Cir., 1951, 189 F.2d 708; Addison v. Tennessee Coal, Iron & Railroad Co., 5 Cir., 1953, 204 F.2d 340, 342; Nevins v. Curtiss-Wright Corp., 6 Cir., 1949, 172 F.2d 535; see Spearmon v. Thompson, supra, 8 Cir., 1948, p. 630 of 167 F.2d, and Moe v. Eastern Air Lines, supra, p. 220 of 246 F.2d.
 
 
 19
 The issue now before us, however, involves a still further refinement. If the work period is one genuinely directed toward proficiency and thus, by the last cited cases, is actually to be served, and if it is completed following the claimant's return from service, is he entitled to a seniority date in the earned position only as of the date of actual completion or retroactively to some earlier date? The decided cases, although often cited in support of varying points of view, seem to provide these answers:
 
 
 20
 (a) Where it is found, or where the parties have stipulated or conceded, that, but for the period of military service, the work period would have been completed by a date certain or in a particular order among the upgraded employees, or, in other words, that the claimant would have been promoted automatically or by reason of mere passage of time, the claimant-veteran is entitled to seniority in his new position retroactively to that earlier date or in that order. Diehl v. Lehigh Valley R. R. Co., 1955, 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749, reversing, per curiam, the Third Circuit's decision at 211 F.2d 95, which in turn had affirmed the district court, 22 C.C.H. Labor Cases, Par. 67,375; Mann v. Crowell-Collier Publishing Co., 6 Cir., 1956, 239 F.2d 699, 701; Norris v. Robertshaw-Fulton Controls Co., E.D.Tenn., 1957, 150 F.Supp. 431, 432; Bostick v. General Motors Corp., E.D.Mich., 1958, 161 F.Supp. 212, 216; McNichols v. Southern Ry., E.D.Ky., 1961, 194 F.Supp. 148, 150. See McKinney v. Missouri-Kansas-Texas R. R. Co., supra, 1958, 357 U.S. 265, 273-274, 78 S.Ct. 1222, 2 L.Ed. 2d 1305.
 
 
 21
 (b) On the other hand, if the claimant's promotion is not certain (as is the case where comparative ability, physical condition, age, employer's discretion, and the like, are factors) but is only probable — even highly probable — retroactive seniority is withheld. McKinney v. Missouri-Kansas-Texas R. R., supra, pp. 271-272 of 357 U.S., p. 1226 of 78 S.Ct., where it was said:
 
 
 22
 "However, § 9(c) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section 9 (c) does not assure him that the past with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.
 
 
 23
 "Thus, on application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer. * * * Petitioner was not titled to a group 1 position simply because in his absence it had been bulletined, and if he had then been employed he might have applied for it, and respondent might have found that he possessed the requisite fitness and ability."
 
 
 24
 Sularz v. Minneapolis, St. Paul & Sault Ste. Marie R. R. Co., 8 Cir., 1958, 259 F.2d 122, 124, where this court said:
 
 
 25
 "Since it is manifest that this is a strong or high probability situation, the trial court's conclusion finds full support in McKinney v. Missouri-Kansas-Texas Railroad Co., supra. That case authoritatively put to rest the question of whether returning veterans are entitled to retroactive promotions and seniority rights by holding that, to entitle the veteran to relief, the facts must show that the veteran would have been upgraded automatically, and that a strong probability of advancement will not suffice."[7]
 
 
 26
 Raulins v. Memphis Union Station Co., 6 Cir., 1948, 168 F.2d 466, 469; Poore v. Louisville & Nashville R. R. Co., 5 Cir., 1956, 235 F.2d 687, 691; Bassett v. Texas & Pacific Ry. Co., 5 Cir., 1958, 258 F.2d 819; Horton v. United States Steel Corp., 5 Cir., 1961, 286 F.2d 710, 713; Palmquist v. Buhl Sons Co., E.D.Mich., 1959, 179 F.Supp. 638.
 
 
 27
 These decisional results are not contested by the claimants here. Their argument, as already indicated, is that, despite the uncertainties which concededly existed at the time of their entry into military service, their return to work and their completion of the work period dispelled those uncertainties and rendered them unfounded in fact. Therefore, it is said, since the work period has been completed and they have elected carman's seniority, it follows that, but for the military service, the plaintiffs would necessarily have achieved the higher status just ahead of their next junior upgraded helpers. Unfortunately, from the plaintiffs' viewpoint, there appears to be little or no effective supporting authority among the numerous cases interpreting the Act. We have found only two cases, Morris v. Chesapeake & Ohio Ry. Co., 7 Cir., 1948, 171 F.2d 579, cert. den. 336 U.S. 967, 69 S.Ct. 938, 93 L.Ed. 1118; and Conner v. Pennsylvania R. R. Co., 1949, 85 U.S.App.D.C. 223, 177 F.2d 854, cert. den. 339 U.S. 919, 70 S.Ct. 622, 94 L.Ed. 1343, where courts of appeals appear to have allowed later events to dispel antecedent uncertainties. The serious obstacle to the authoritativeness of these two cases is the great likelihood that they are effectively overruled by McKinney and by its requirement, for a contrary result, that the promotion in question be automatic and that, seemingly, it be automatic as a matter of foresight rather than of hindsight.
 
 
 28
 Plaintiffs do not rest their cases on Morris and Conner but, instead, urge that the Supreme Court's summary and per curiam reversal of the Third Circuit's decision in the Diehl case compels a conclusion in their favor here; that uncertainties did exist in Diehl; and that they were eliminated by performance.
 
 
 29
 We disagree. The summary reversal in Diehl, if the case is not inconsistent with McKinney, is perhaps to be explained by a conviction on the Court's part that there was no uncertainty involved in the Diehl facts. This seems to be indicated by the Court's positive reliance on Oakley v. Louisville & Nashville R. R. Co., supra, 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87, where no uncertainty is ascertainable from the Court's opinion, and by the stipulation[8] in Diehl, p. 97 of 211 F.2d that the claimant "would have completed" the work period on a given date if there had been no military service interruption. These stipulated words imply that the work completion was not dependent upon prior resolution of any contingency or uncertainty.
 
 
 30
 The present cases are otherwise. The trial court found specifically that by the bargaining agreement the initial choice of carmen helpers for upgrading was a matter of selection, not upon chronological seniority alone, but by the union and the railroad "with due regard to seniority and qualifications for advancement"; that by this the parties meant "aptitude for learning the trade and skills of a carman"; that "they did not mean to imply that a helper selected for temporary advancement was to be considered as a qualified carman when selected"; that in actual practice, "the selection of helpers for upgrading was not always in strict order of seniority";[9] that the 1040 day requirement called for actual work for that period and was intended by the railroad and the union as an on-the-job training period "for the purpose of increasing proficiency in skill through actual experience"; that actual practice "was in accord with that intention"; that helpers' completion of the work period was required before they were "considered sufficiently skilled to qualify as carmen and acquire a carman's seniority"; that "the position of carman was one of much greater responsibility and required considerably more skill and experience than the position of carman helper"; that whether the plaintiffs, if they had not been in military service, would have worked as temporary carmen on every date work was available and would have completed the work period before the next junior upgraded helper or by any given date, "is not certain, even though in retrospect it may be regarded as highly probable"; that it was also uncertain whether the particular plaintiff would have elected at the earlier date to relinquish his helper's seniority; that the upgraded helpers had no guaranty, either by contract or by actual practice, that they could ever complete the work requirement; and that completion and the date thereof depended "on a number of variable factors not within the plaintiffs' control, among which were (1) layoffs due to illness or reductions in force, (2) the continuing unavailability of enough qualified carmen to fill carman's positions, and (3) continued satisfactory work by the carman helper in the upgraded position". Findings of this kind were not present in Diehl. We also note that each plaintiff's helper's seniority was at all times preserved, that only at the completion of the work period did the employee make his final choice between a currently dated carman seniority and the retention of an earlier achieved helper's seniority, and that the record discloses instances of voluntary retention of helper status and seniority following completion of the work period. All this, it seems to us, as it did to the district court, lacks the essentials of the automatic in the entire system of promotion from carman helper to full-fledged carman.
 
 
 31
 McKinney instructs us that each of these plaintiffs is not entitled to "perfect reproduction of the civilian employment that might have been his" if he had not been called to service; that there is much "that might have flowed from experience, effort, or change to which he cannot lay claim under the statute"; and that the Act "does not assure him that the past with all its possibilities of betterment will be recalled" or give him "a status that he could not have attained as of right". The situation here strikes us as clearly falling on that side of the factual line governed by McKinney rather than on the side governed by Diehl.
 
 
 32
 Of course, if Diehl and McKinney are in any way inconsistent in their holdings, we must necessarily follow McKinney as the latest pronouncement by the Supreme Court.
 
 
 33
 The plaintiffs would distinguish McKinney on the ground that the claimant there sought to establish only that his seniority rank alone gave him the right to promotion and that, having taken this stand, he had to prove that fact or lose his case. They further state that the Court's comments in McKinney are manifestly inapplicable where a plaintiff's claim is based on seniority plus other elements and it is established as a fact that those other elements exist. This, they say, was the situation in Diehl and Oakley. Furthermore, all the uncertainties which had earlier existed had disappeared by the time of trial and thus had the veterans not been absent they would have been promoted ahead of the upgraders junior to them.
 
 
 34
 We think that McKinney is not so easily explained away. Accepting the trial court's findings as to contingencies and probabilities, which, as we have already noted, are not challenged here, the reasoning of McKinney compels us to conclude that the entry of judgment for the defendant in each case was correct. Until the Supreme Court tells us otherwise, we necessarily follow what we feel is the holding of that case.
 
 
 35
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 This Act, adopted in 1948, succeeded the Selective Training and Service Act of 1940, 54 Stat. 885
 
 
 [2]
 The agreement important here is one effective August 1, 1953, and is collateral to the basic agreement between the railroad and the union. It is a successor to other agreements and in turn has since been supplemented. The parties concede its applicability
 
 
 [3]
 "Section 1
 "When the Carrier is unable to employ qualified carmen, truckmen, apprentices and helpers will be advanced to carmen as prescribed by this agreement.
 "Advancements will be made in the following order and manner:
 * * * * *
 "(d) Should the need for carmen not be met by the advancement of truckmen and apprentices, helpers employed at the point where carmen are needed, who are qualified for advancement, will be so advanced. First choice to be made from helpers with two years or more of service as such. Master Mechanic or Superintendent of Shops and Local Committee will jointly agree on the helpers to be advanced. In the event there is disagreement on one or more helpers, * * * the names of the helpers not agreed on * * * will be referred to the General Chairman and Chief Mechanical Officer for prompt determination of the qualifications of the men involved. * * *
 "Section 2.
 "A list of all men advanced temporarily as carman will be compiled and maintained. Men will be listed on the same in the order of their upgrading and the date of upgrading will be shown * * * The listing of the dates is not to be considered as a seniority date. When force reductions are made, the demotion from carman shall be in the reverse order of upgrading * * *
 "Section 3. * * *
 "(b) A helper who has been or who is later advanced to carman will retain seniority as helper. When he has completed a total of 1040 days of service as carman he shall be considered as a qualified carman. At the completion of the 1040 days of service he will make his choice in writing to acquire a seniority date as carman as of the ending date of the 1040 days of service as such and relinquish his seniority as helper. If he fails to do so he will return to status of helper and will not again be considered in the selection of men for advancement under this agreement. He may, however, at a later date be employed as a carman and acquire a seniority date as carman as of the date so employed but will automatically lose seniority as a helper.
 "Section 4. * * *
 "* * * helpers returning from the armed services, whose seniority has been protected as provided for by the laws of the United States and by agreement between the Organization and the Carrier will be governed by the following:
 * * * * *
 "(c) Helpers upgraded to carmen will retain their position on the list of upgraded men if they enter the armed services.
 "Section 5.
 "Upgraded men will be permitted to make application for vacancies to positions as carmen and if there are no bids received from men who hold seniority as carmen, the upgraded men making application will be assigned based on their position on the upgraded list. * * *"
 
 
 [4]
 "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who * * * makes application for reemployment within ninety days after he is relieved from such training and service * * *
 "(B) if such position was in the employ of a private employer, such person shall —
 "(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; * * *
 "(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.
 "(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment. * * *"
 The 1940 Act contained provisions similar to those of § 9(b) and (c) (1) but in the earlier Act those provisions were in § 8(b) and (c). § 9(c) (2) is new in the present Act.
 
 
 [5]
 In line with § 9(c) (2) of the Act and McKinney v. Missouri-Kansas-Texas R. R. Co., 1958, 357 U.S. 265, 270-271, 78 S.Ct. 1222, 2 L.Ed.2d 1305
 
 
 [6]
 Although the issue is not present in the cases before us, it is to be noted that the Supreme Court's definition of seniority is a broad one and allows consideration of far more than mere length of service. Aeronautical Industrial Dist. Lodge 727 v. Campbell, supra; Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048
 
 
 [7]
 In Sularz, although the issues litigated concerned other non-veterans, the railroad eventually gave the claimant the retroactive seniority refused here. See Sularz v. Minneapolis, St. Paul & Sault Ste. Marie R. R. Co., D.Minn., 1956, 148 F.Supp. 83, 85, and p. 123 of 259 F.2d, footnote 2. This, however, was pursuant to a later agreement with the union and did not rest upon the provisions of the Act. It thus affords no precedent for the present cases
 
 
 [8]
 The parties in their briefs here both refer to a stipulation in Diehl. We find no clear reference to a stipulation in the opinions of either the Third Circuit or the district court. Inasmuch, however, as the plaintiffs' present counsel argued the Diehl case in the Supreme Court, we assume the existence of the stipulation. In any event, the trial court there appears to have found as a fact that the plaintiff "would have completed" the work period on a given date
 
 
 [9]
 This is illustrated by the dates of upgrading of plaintiffs Beck and McClearn set forth in the table, supra