## UNITED STATES v. LEVI.

No. 9794.

United States Court of Appeals, Seventh Circuit.

Oct. 7, 1949.

As Modified Nov. 9, 1949.

George R. Jeffrey, Indianapolis, Ind., Sheldon E. Bernstein, Washington, D. C. (Newmyer & Bress, Washington, D. C., of counsel), for appellant.

B. Howard Caughran, United States Attorney, Elba L. Branigin, Jr., Assistant United States Attorney, Indianapolis, Ind., Maurice W. Graston, Assistant United States Attorney, Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and MINTON and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

The defendant was tried in the district court simultaneously on two separate indictments. The first contained three counts and charged that the defendant, who was president of the Elwood Iron and Metal Company, Inc. (hereinafter called the "corporation"), willfully attempted to defeat and evade taxes due by the corporation for the calendar years 1943, 1944, and 1945, by filing false and fraudulent tax returns which understated the corporate net income and taxes due for said respective years. The second indictment made similar charges for the same years, in respect to personal evasion of taxes by the defendant.

The defendant is 67 years of age and has been conducting a junk business in Elwood, Indiana, for 52 years. In 1924 he incorporated his business under the name of El-

wood Iron and Metal Company, Inc., which is wholly owned by the defendant and his immediate family, except for one share of stock.

At the trial defendant made timely motions for judgment of acquittal, which the court took under advisement. Before ruling on said motions the case was submitted to the jury, which acquitted the defendant of the charges in the indictment pertaining to attempted personal tax evasion but which found defendant guilty on the three counts relating to attempted tax evasion by the corporation. Several weeks later the court overruled the motion for judgment of acquittal in the case charging him with attempted corporate tax evasion, and sentenced defendant to five years imprisonment and assessed a fine of $7,000.

Various errors are relied on, but it will be necessary to consider only whether the court erred in failing to grant defendant's motion for a judgment of acquittal and for a mistrial because of alleged prejudicial matters injected into the trial by the prosecution and alleged prejudicial remarks by the trial judge.

On November 8, 1948, a jury was impaneled in this case. Before any evidence was taken and while the jury was in the box, the trial was suspended in order for the district judge to take the plea of guilty of one John J. Ward, who was a co-defendant with the defendant in another case, U. S. v. Levi, et al., 7 Cir., 177 F.2d 827, on a charge of conspiracy to steal government property. Before the plea was taken, defendant's counsel requested the court to put over until some other time the matter of taking Ward's plea because of the possible prejudicial effect upon the case against this defendant.

Both Levi and Ward had theretofore entered pleas of not guilty in the conspiracy case. The district judge overruled this request of defendant's counsel and permitted Ward to change his plea from not guilty to guilty, after having informed defendant Levi's counsel that the name of Levi would not be mentioned before the jury. At the time Ward's plea was taken and received in open court, which was in the immediate presence of the jury sitting in the box, the district judge remarked, "Perhaps this will make other defendants in the case want to change their pleas," whereupon the trial of this case was resumed.

On the following morning the "Indianapolis Star" published an article on the front page of its second section, describing the taking of Ward's plea of guilty and which connected Levi as a co-defendant in the conspiracy case, and the judge's remarks, as hereinbefore set forth, were quoted therein. Upon the opening of court that morning the defendant's counsel moved for a mistrial on account of the prejudicial effect of the published newspaper article and on account of the events leading up to it. The motion was made in the absence of the jury. The record recites:

"Mr. Jeffrey: Your Honor, at this time the Defendant moves that this Jury be discharged and that this be declared a mistrial for the reason that certain remarks appeared in the Star this morning and on account of the events leading up to them.

"The Court: If the Jury did not read it any more than I did, they didn't read it.

"Mr. Jeffrey: It appeared and several people have spoken to me. I don't see how the Jury could have missed it.

"The Court: How could the Court miss it?

"Mr. Jeffrey: It is in a very prominent place in the Star.

"The Court: What did it say?

"Mr. Jeffrey: It recounts directly the connection that Mr. Levi had with this man that pleaded guilty. It put before the Jury or anybody that read it, that Levi, the Defendant, was a man who pleaded guilty to conspiracy in which he is involved, and the fact that Levi was going to trial for a tax case.

"The Court: That is true, isn't it? The fellow did plead guilty.

"Mr. Jeffrey: The fellow did plead guilty, but I don't believe he should have been permitted to plead guilty before this Jury.

"The Court: That would not have kept the newspapers from having it.

"Mr. Jeffrey: That is right but also, your Honor yesterday said that he would not mention the name of Levi and he didn't, but your Honor did make some remark that that plea of guilty might cause the others to plead guilty and the newspaper took that up and directly connected it with Levi and printed it. I don't see how it could help but prejudice this Jury.

"The Court: It is overruled.

"Mr. Jeffrey: May I offer in evidence Defendant's Exhibit A?

"The Court: No. You can offer it, but it won't be read.

"Mr. Jeffrey: The Defendant offers in evidence Defendant's Exhibit A, which is the front page of the second section of the Indianapolis Star of Tuesday, November 9, and I think—

"The Court: (Interposing) I think we told them that was altogether a different case.

"Mr. Jeffrey: I think your Honor did, but I think this is so prejudicial that I think it would influence them.

"The Court: I don't think anything would prejudice the Jury in this case. I am saying that in the absence of the Jury.

"Mr. Jeffrey: We offer this in evidence.

"(The Jury returned to their seats.)

"The Court: I never heard of a newspaper article being put in evidence in a case of this kind, did you?

"(Nobody answered.)"

Just before taking the noon recess on the day that the article appeared in the "Indianapolis Star," the court said to the jury:

"The Court: * * * I want to caution you again that you not talk with anyone about the case, or permit anyone to talk with you about it or in any manner, think about what your verdict is going to be. That means you should not talk between or among yourselves and you should not read anything that might occur in any newspaper during the trial of this case. I assume that you followed the instructions the Court gave you yesterday about reading in the newspapers, did you? Did any of you read any article in the newspaper pertaining to this case during the time you were out last night, any of you, so that if there was anything in any newspaper pertaining either to this case or any other cases you never read it, is that true? Does that apply to all of you?

"(The Jury indicated that was true.)

"The Court: I would follow those instructions very carefully. Sometimes there is an article in the newspaper about other cases in this court. I think I would not read that because you are interested only in trying this case and deciding it under the law and evidence as produced here in court, not what some newspaper might say, so if there is anything in the morning Star, yesterday evening's papers about this case, as I understand you, none of you ever read it, is that right? Is that true of all of you?

"(The Jury indicated that was true.)"

The court then changed his previous ruling and permitted Exhibit A to be received in evidence.

Two days following the conclusion of the trial in this case, the trial of the conspiracy case was commenced. The defendant John J. Ward was not sentenced for some 17 days following the conclusion of that case. The record does not disclose, nor are we able to visualize any urgency to explain why the district judge interrupted the trial of this case to permit Ward, in the presence of the jury, to change his plea in the conspiracy case from not guilty to guilty. The trial judge knew that Levi and Ward were co-defendants in the conspiracy case, and he at least should have excused the jury while the plea of guilty was being received. Not only did he fail to do so and in addition overruled defendant's request to have the matter deferred, but also, in the presence of the jury in this case, said, "Perhaps this will make other defendants in the case want to change their pleas." Obviously the court was referrng to defendant Levi.

■ The question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal court. Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350. In referring to the harmless error statute (28

U.S.C.A. § 391 [1]), the Supreme Court said in the Bollenbach case, supra, 326 U.S. at page 615, 66 S.Ct. at page 406: "* * * In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be."

█ The influence of the trial judge on the jury is necessarily and properly of great weight, Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841, and jurors are ever watchful of the words which fall from him. "The judge occupies a position of great influence with the jury in conducting a trial; * * * he should be careful not * * * to say anything which might have the effect of prejudicing the cause of either party before those whose duty it is to decide on the facts." Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 405.

█ The government urges, however, that defendant Levi's name was not specifically mentioned by the judge and that there is no proof that any juror read the newspaper article which identified Levi as Ward's co-defendant, and further that the record affirmatively indicates that no juror read said article.

Apparently the jury was not polled on this question. The reproving manner in which the court questioned the jury would probably cause any juror to hesitate admitting he or she had read the article. The court said, "I assume that you followed the instructions the Court gave you yesterday about reading in the newspapers, did you? Did any of you read any article in the newspaper pertaining to this case during the time you were out last night, any of you, so that if there was anything in any newspaper pertaining either to this case or any other cases you never read it, is that true?" The record states, "(The Jury indicated that was true.)" The court said further, "So if there is anything in the morning Star, yesterday evening's papers about this case, as I understand it, none of you ever read it, is that right?" The record discloses, "(The Jury indicated that was true.)" And further, the court said, "I want to be certain none of you did read the morning Star, any article, each and every one of you." The record reads, "(None of the Jurors included * that he had read it.)"

We must assume that the jury was comprised of average, intelligent men and women. They had sworn to try the issues in this case. They were in the box ready to perform their duty when the trial was suddenly interrupted. John J. Ward was brought before the judge to enter a plea of guilty in an entirely separate case in which he and the defendant in this case were co-defendants. Levi's counsel became aware of the maneuver and attempted to have the taking of the plea deferred, and spoke to the judge about it. Although the jury was right there we will assume that the jury could not hear his words, but every juror saw Levi's counsel become suddenly active with reference to whatever action was to take place, and could note that after Levi's counsel was rebuffed, Ward changed his plea from not guilty to guilty, and heard the trial judge say, "Perhaps this will make other defendants in the case want to change their pleas." There were only two other defendants in that case, Ward's brother and Levi, and Levi alone was in court and before the judge in a position to benefit by the judge's remark, and he of course was the only person who could be influenced to follow the suggestion contained in that remark.

At no time thereafter during the trial did the judge explain his comment to the effect that Ward's co-defendants might want to enter pleas of guilty. The newspaper article giving wide publicity to the judge's statement, and to the fact that Levi was Ward's co-defendant, had been adequately called to the judge's attention. Thus, from the very beginning of the trial

---

1. See Federal Rules of Criminal Procedure, Rule 52, 18 U.S.C.A.

* The verb, "indicated," probably was meant.

of this case, the scales of justice were in effect weighted against Levi. In our opinion he did not have a fair trial. As the court said in United States v. Antonelli Fireworks Co., Inc., et al., 2 Cir., 155 F.2d 631, 642, "* * * we must be acutely sensitive to errors affecting human rights and freedom; * * *."

Nor can we consider it a harmless error to be disregarded under Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A. "But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557. We conclude that substantial rights of the defendant were prejudiced. Such being the case the government had the burden of sustaining the verdict. Kotteakos v. United States, supra, 328 U.S. at page 760, 66 S.Ct. 1239. We are of the opinion that the government has not discharged the burden resting upon it, and that the judgment of guilty herein cannot be sustained.

Reversed and remanded for a new trial.

