UNITED STATES of America,
Plaintiff-Appellee,

v.

Sanders SCOTT and Edward Copeland,
Defendants-Appellants.

No. 12251.

United States Court of Appeals
Seventh Circuit.

July 17, 1958.

Earl E. Strayhorn, Rogers, Rogers, Strayhorn & Harth, Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., William A. Barnett, Asst. U. S. Atty., Chicago, Ill., Robert W. Schafer, Atty. Chief Counsel's Office, I. R. S., (John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Robert W. Schafer, Atty. Chief Counsel's Office, I. R. S., Chicago, Ill., of counsel), for appellee.

Before MAJOR, HASTINGS and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

Sanders Scott, Edward Copeland and Julian A. Black were tried to a jury on a thirteen count indictment.

Counts I, II and III charged all three defendants with the preparation and presentation of a false and fraudulent partnership return for 1949, 1950 and 1951 in violation of Title 26 U.S.C.A. § 3793 (b) (1). The remaining counts charged each defendant with evading his individual income taxes for the same period and Scott for the additional year 1948 in violation of Title 26 U.S.C.A. § 145(b).

The defendants moved for an aquittal at the close of the Government's case. The District Court granted the motion as to defendant Black and denied as to defendants Scott and Copeland.

The jury found defendant Scott not guilty as to the 1948 charge but found both defendants Scott and Copeland guilty on all other counts in which they were charged. The District Court entered judgment on the verdict and pronounced sentence. Motions of defendants for a new trial were denied. This appeal followed.

Discussion of all the errors relied upon for reversal, as incorporated in the statement of the contested issues upon which the parties are in agreement, would serve no purpose other than to unnecessarily extend this opinion. However, two of the seven contested issues are:

"1. (b) Whether the court erred in denying defendants' motions for a new trial.

"2. Whether the court erred:

"(c) In denying the motion for a Mistrial."

The fourth of over twenty witnesses called by the Government was Raymond W. Garrigan, an Internal Revenue Agent with the United States Treasury Department. He was an important witness for the Government and his direct testimony was very extensive. However, after he had detailed a conversation of May 13th with the defendant Black covering the matter in issue the United States Attorney, with full knowledge of what he would say, asked him:

"Mr. Garrigan, I believe that we have concluded the discussion on May 13th concerning those particular books. What else if anything was said on that occasion?"

Garrigan then gave the following answer, as the Prosecutor admittedly knew he would:

"Well, I asked Mr. Black if he paid any protection for the wheel, paid for any protection."

The defendants objected and the trial court excused the jury from the courtroom permitting them to take to their jury room a written document identified as Government Exhibit 351. Counsel for the defendants suggested to the trial court the impropriety of such procedure and the judge instructed the marshal to go into the jury room and "[a]sk them to let me have the exhibit, so there will be no discussion."

There was some colloquy between court and counsel on the admissibility of the evidence as to whether the defendants paid police protection. The judge said:

"As far as the eyes of the jury, I think it will be prejudicial, and cannot have any but a prejudicial effect."

He then asked Government counsel what he proposed to show. The United States Attorney replied that the evidence would show that Garrigan asked Black "if he paid police protection money, and Mr. Black said, first, said he paid very little, then he asked him how much, and he said he didn't know how much, and he said: Well, you must have some idea. Then he said it was negligible, that when a man was arrested he had to pay five or ten dollars, and over the years the amount was negligible." This evidence was highly prejudicial to the defendants.

The judge then had the jury returned to the courtroom and he spoke to them as follows:

"Ladies and gentlemen, with all the effort that the Court has made to keep prejudice out of this matter, you have heard a highly prejudicial question. I regret it very much. We have tried to try this case on the issue of income tax and not on the issue of corruption of police forces.

"I have ruled that the question may not be asked and may not be answered. It is very unfortunate. I am surprised—this is a very high grade United States District Attorney here, and I am surprised that he has brought this element of prejudice into this case. I regret it very much.

"I am going to change my ruling because of the offer of proof, and the chips can fall where they may. I will not take the responsibility for prejudice if a higher court shall reverse this case because of the element of prejudice that has been brought in.

"I think the fact that the question has been asked, if it goes unanswered it will be far more serious so far as the defendants are concerned in this case than to have it answered.

"The record has been made by the District Attorney and I regret it very much."

The defendants then moved that a juror be withdrawn and for a mistrial. The court took the motion under advisement and ordered the Government to pursue the entire incompetent matter.

Apparently court reporters were changed at this juncture and an argument ensued about what question had actually been asked. The judge permitted the situation to get out of control to such an extent that one of the jurors spoke out as follows:

"It was the answer that was given that brought that in, not the question, as I remember it."

The judge then succeeded in getting the right court reporter into the courtroom. The correct question and answer were read. Counsel for the Government then asked a question. The judge interrupted by saying:

"No, I want you to pursue the conversation exactly as it was pursuant to the objections. I want to go right on with the conversation."

Counsel for the Government then interrogated the witness Garrigan fully on this matter which, as we have already pointed out, was highly prejudicial. Thereupon the judge announced that he would "excuse the witness for the day, and you will return tomorrow morning."

The judge then made a stump speech to the jury informing them that he didn't like the element of prejudice that had been interjected and said:

"I am going to ask each member of the jury to raise your hand, if you think you can go ahead and try this case. That is the reason I had the rest of the questions asked. If it hadn't been pursued, there might have been a question in your mind that there was an element of protection that you had not been able to hear. All of this has nothing to do with the case because in the end they say that the expense is negligible, they are not claiming any credit for expense that was paid out.

"I am going to ask you to raise your hands, each of you, if you feel you can go ahead and try this case and eliminate that with the instruction that I have given and the remarks I have made and the criticism that I have made of the District Attorney's office and of the witness himself for bringing this out.

"You know these witnesses all know what they are doing. This was intentionally brought out by the Government, and it has hurt their case. It should not have been brought out and they know it shouldn't have been brought out. I don't like it.

"We have spent a lot of time already, and if the withdrawal of a juror is granted, we have got to go through and try this case all over. Everything we have done has to be done all over, another jury chosen, and all that, unnecessary expense.

"But I am going to ask you—it is your judgment now. I am going to rely a lot on what you tell me. If you think you can try this and put this element out of your mind and not be prejudiced in any way, raise your hands. If you don't think you can do it, don't raise your hands.

"Now let's see if there is anyone who can raise their hands and handle this matter without prejudice."

The Court then noted one juror, Mrs. Portner, was not raising her hand. The judge then said: "I can only sympathize with you. As far as I am concerned, I can understand that a person might well feel that way" and *sua sponte* discharged her from the jury and replaced her with an alternate juror. He then adjourned court for the day.

The next morning, out of the presence of the jury, the judge guessed that if there was no argument on the motion of the defendants to withdraw a juror and for a mistrial he would overrule it. He did so and after considerable argument of counsel the jury was seated.

The judge then made a second impromptu speech to the jury wherein he said, *inter alia:*

"[T]he United States District Attorney here who, I may say to you, has tried a number of cases before me and I am going to tell you personally that *I am very fond of him.* It is the first time in his long career that I have had any criticism of him. *I think he has been an excellant man. I think he is a man of the highest integrity and I think highly of him,* * * *. It is the duty of

every lawyer to talk to his witnesses beforehand and ask questions of them. I knew he knew what the answer was going to be and I asked him if he did know and he told me what the witness would say. I asked the witness out of the presence of the jury and he said then what he later said in front of you, so the witness knew and counsel knew what the answers were to be elicited and I still say it was prejudicial, but you have given me your assurance that you can overlook it. * * * I am going to ask you to not hold that against this District Attorney. * * I am going to ask you to not hold it against the United States Government and not to be prejudiced by what has happened, one way or the other."

■■ The influence of the trial judge on the jury is necessarily and properly of great weight, Starr v. United States, 1894, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841, and he should not say anything which might have the effect of prejudicing the cause of either party before those whose duty it is to decide on the facts. United States v. Levi, 7 Cir., 1949, 177 F.2d 833. It is the duty of the trial judge to endeavor to maintain throughout the trial an atmosphere of impartiality. United States v. Wheeler, 7 Cir., 1955, 219 F.2d 773. In diametric opposition to all these rules the trial judge here permitted evidence to go to the jury which was highly prejudicial to the defendants. He then compounded the error with his extremely laudatory praises of counsel for the Government. While perhaps counsel for the Government is a man of the highest integrity and one of whom the judge might well be very fond, for him to have said so to the jury at this juncture coupled with the prejudicial evidence admitted, in our opinion, did irreparable harm to the defendants.

When a judge extols counsel for any jury trial litigant as an exemplar immediately after counsel has purposely and successfully placed in evidence before the jury highly prejudicial testimony such partiality would exert such a strong controlling influence on the jury against the adverse party as to preclude any possibility of a fair trial. Thus the trial court here committed reversible error.

Judgment reversed and cause remanded for new trial.