**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph S. BUKOWSKI, Respondent-**
**Appellant.**

**No. 17378.**

United States Court of Appeals,
Seventh Circuit.

Sept. 15, 1970.

Rehearing Denied Oct. 15, 1970.

Anna R. Lavin, Carl M. Walsh, Chicago, Ill., for respondent-appellant.

William J. Bauer, U. S. Atty., D. Arthur Connelly, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Respondent appeals from a 3-year sentence for criminal contempt allegedly committed by him while a juror in the case of United States v. Durovic, et al., No. 64 CR 668 (N.D.Ill.1966).

On April 27, 1965, respondent and the other members of the trial jury were sworn for examination upon the voir dire. Between April 28, 1965, and the conclusion of the trial on January 31, 1966, Bukowski and his fellow jurors were ordered and directed by the trial judge to avoid discussing, reading or hearing about the case, either intentionally or inadvertently. The instructions directed them not to converse among themselves concerning the case, or with outsiders. They were expressly directed to avoid reading newspaper or magazine articles, and were warned concerning radio and television broadcasts. The district judge also admonished any juror obtaining outside information to report that fact to the court immediately. These instructions were given the jury every day, four times a day, during the entire duration of the trial until January 31, 1966.

The *Durovic* trial concerned allegedly fraudulent practices connected with the sale of the "anti-cancer" drug Krebiozen. During the course of the trial, an article by Dr. Andrew C. Ivy, a defendant, appeared in the July-August 1965 issue of the "Butcher Workman" magazine published by the Amalgamated Meatcutters and Butcher Workmen of North America. The article was entitled "The Truth That Won't Stay Buried," and the same edition contained an editorial on Krebiozen. Respondent, a member of the executive board of the Chicago Joint Board Amalgamated Meatcutters and Butcher Workers, Fur, Leather and Luggage Division of the publishing organization, allegedly read these items and discussed them with other members of the jury. Similarly, respondent allegedly read and discussed subsequent articles on Krebiozen in the October 1965, November-December 1965, and January 1966 issues of "The Butcher Workman."

In addition to these improprieties, respondent was also charged with attending a convention of the Amalgamated Meatcutters in Springfield, Illinois, during the course of the trial. The minutes of the convention reveal that a speaker favorable to Krebiozen addressed the members, and subsequently a film on the same subject was shown. The members of the union at that convention entered a resolution calling for a "fair and impartial clinical test of Krebiozen." Respondent allegedly engaged in these activities in contravention of the court's order. At no time did Bukowski report any such activities to the trial judge as instructed.

On December 29, 1967, the United States Attorney for the Northern District of Illinois initiated contempt proceedings against respondent by filing a verified Notice and Petition For Rule to Show Cause with the district judge. The judge issued the Rule to Show Cause to respondent why he should not be held in criminal contempt under 18 U.S.C. § 401(3)[1] for violating judicial

1. 18 U.S.C. § 401 provides:
"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
(2) Misbehavior of any of its officers in their official transactions;
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

orders regarding publicity and conduct of jurors during the Durovic trial.

Respondent filed motions to discharge the Rule to Show Cause in March 1968 which were denied on April 5. Subsequently, respondent unsuccessfully attempted to obtain recusation of the judge. On January 7, 1969, the judge designated the offense as serious and denied a Supplemental Motion to Discharge the Rule to Show Cause. On January 16, 1969, after a jury trial, respondent was found guilty, and the judge sentenced him to imprisonment for three years. Respondent appeals from his conviction and sentence.

## I

Respondent first objects to the manner in which criminal contempt proceedings were instituted against him. The procedures followed in initiating this prosecution complied with the specifications of Rule 42(b) of the Federal Rules of Criminal Procedure relating to the disposition of contempts occurring out of the presence of the judge.[2] The processes outlined by that rule include notice and specification of charges. Despite prior approval of the Rule's procedures (United States v. United Mine Workers of America, 330 U.S. 258, 296, 67 S.Ct. 677, 91 L.Ed. 884; Yates v. United States, 316 F.2d 718 (10th Cir.

1963)), respondent asserts their insufficiency.

Specifically, respondent contends that the Constitution prohibits imposition of the 3-year sentence without an indictment or presentment of a grand jury. He argues that the Fifth Amendment bars the Government from holding persons "to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury * * *." A crime is "infamous" for purposes of this protection when it is punishable by imprisonment in a penitentiary. Mackin v. United States, 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909. Punishment of contempt by the 3-year sentence subjecting respondent to imprisonment in a penitentiary under 18 U.S.C. § 4083 purportedly establishes the conviction as an "infamous crime."

The identical argument was categorically rejected by the Supreme Court in Green v. United States, 356 U.S. 165, 183–187, 78 S.Ct. 632, 2 L.Ed.2d 672.[3] The Court refused to interject any independent body into the criminal contempt process which might interfere with or impede judicial disposition of such matters. The majority rested its rejection of the requirements for either grand or petit jury action because of the *sui generis* "general status of contempts under the Constitution,

2. Rule 42(b) of the Federal Rules of Criminal Procedure states:
   "(b) *Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these

rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

3. Several decisions preceding *Green* either questioned, or rejected the characterization of contempt as an "infamous crime." See Bessette v. W. B. Conkey Co., 194 U.S. 324, 336, 24 S.Ct. 665, 48 L.Ed. 997; Gompers v. United States, 233 U.S. 604, 612, 34 S.Ct. 693, 58 L.Ed. 1115; cf. Bloom v. Illinois, 391 U.S. 194, 201, note 3, 88 S.Ct. 1477, 20 L.Ed.2d 522 (apparently citing *Bessette* with approval for its conclusion that contempt could not be considered an infamous crime).

whether subject to 'infamous' punishment or not." 356 U.S. at p. 183, 78 S.Ct. at p. 643. The traditionally summary nature of these proceedings led the Court to conclude:

> "We do not write upon a clean slate. The principle that criminal contempts of court are not required to be tried by a jury under Article III or the Sixth Amendment is firmly rooted in our traditions. Indeed, the petitioners themselves have not contended that they were entitled to a jury trial. By the same token it is clear that criminal contempts, although subject, as we have held, to sentences of imprisonment exceeding one year, need not be prosecuted by indictment under the Fifth Amendment. In various respects, such as the absence of a statutory limitation of the amount of a fine or the length of a prison sentence which may be imposed for their commission, criminal contempts have always differed from the usual statutory crime under federal law. As to trial by jury and indictment by grand jury, they possess a unique character under the Constitution." 356 U.S. at p. 187, 78 S.Ct. at pp. 644–645.

Respondent nevertheless asks this Court to depart from that ruling on the basis of more recent decisions of the Supreme Court. Criticism and continued attacks eroded the conclusion of *Green* that jury trials need never be afforded defendants in even serious criminal contempt cases. After forecasting possible reconsideration of the right to jury trial in United States v. Barnett, 376 U.S. 681, 694–695, 84 S.Ct. 984, 12 L.Ed.2d 23, the Court exercised its supervisory powers over federal courts to require jury trials of serious contempts. Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629. Finally, in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, the Court reconsidered and repudiated the rule exempting criminal contempts from constitutional requirements of a jury trial in state cases as well.

In holding that the Constitution requires jury trial in serious criminal contempts, the majority in *Bloom* declined to adhere to reasoning espoused previously in *Green*. Thus the majority in *Bloom* rejected historical practice as dispositive of the constitutional issue. 391 U.S. at p. 200, note 2, 88 S.Ct. 1477. The Court also disavowed the conclusion that the judiciary could be trusted "with completely untrammeled power to punish contempt," or that considerations of judicial independence, economy, and efficiency outweighed the fundamental needs of fairness to safeguard the trial of such contempts from arbitrary governmental actions. 391 U.S. at pp. 207, 208–209, 88 S.Ct. at p. 1485.

Though a fundamental departure from prior law, neither *Bloom* nor subsequent decisions of the Supreme Court dealing with serious contempts have expressly overruled the holding of *Green* excepting grand jury indictments in criminal contempts. Moreover, our reading of those decisions fails to disclose inconsistencies or implicit disapproval of that holding which would warrant reconsideration of *Green* by this Court.

■ No decision has indicated a rejection of the engrained conceptual framework of criminal contempts relied upon by the Court in *Green* as the basis for its ruling. These actions have traditionally been considered a unique, quasi-criminal sanction. As stated in Myers v. United States, 264 U.S. 95, 104–105, 44 S.Ct. 272, 273, 68 L.Ed. 577:

> "While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not 'criminal prosecutions' within the Sixth Amendment or common understanding." Accord, Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665; Blackmer v. United States, 284 U.S. 421, 440, 52 S.Ct. 252, 76 L.Ed. 375; Cheff v. Schnacken-

berg, 384 U.S. 373, 380, 86 S.Ct. 1523 (opinion of Justice Clark); see generally, Goldfarb, The Contempt Power (1963).

This constitutional distinction between the status of statutorily defined offenses and the judicial power to punish disobedience of court orders has been the doctrinal premise from which analysis of procedural safeguards has proceeded. Consequently, these constitutional "non-crimes" have been tested by the standards of due process rather than under the Fifth and Sixth Amendments' specific strictures governing federal criminal trials of statutory offenses. See Levine v. United States, 362 U.S. 610, 616–617, 80 S.Ct. 1038, 4 L.Ed.2d 989; cf. Blackmer v. United States, 284 U.S. 421, 440, 52 S.Ct. 252; Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767; Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S.Ct. 492, 55 L.Ed. 797; Gompers v. United States, 233 U.S. 604, 611–613, 34 S.Ct. 693; Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis & Omaha Ry., 266 U.S. 42, 67, 45 S.Ct. 18, 69 L.Ed. 162. The procedural protections which have gradually surrounded imposition of criminal contempt penalties thus represent the accretions of "fundamental fairness" rather than application of provisions of the Bill of Rights to contempt prosecutions as "crimes."

The extension of the Constitution's guarantee of jury trial to criminal contempt prosecutions is entirely consistent with the continued vitality of that legal fiction. The Supreme Court stated in Bloom v. Illinois, 391 U.S. 194, 201–202, 88 S.Ct. 1482:

"Given that criminal contempt is a crime in every fundamental respect, the question is whether it is a crime to which the jury trial provisions of the Constitution apply. We hold that it is, primarily because in terms of those considerations which make the right to jury trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes."

DeStefano v. Woods, 392 U.S. 631, 632, 88 S.Ct. 2093, 20 L.Ed.2d 1308, similarly maintains the distinction between "serious criminal cases" requiring jury trial under Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, and "serious criminal contempts" requiring jury trial under Bloom v. Illinois. Most recently, in Frank v. United States, 395 U.S. 147, 148, 89 S.Ct. 1503, 23 L.Ed.2d 162, the Court again circumspectly limited its statements to jury trial requirements.

■ We cannot, therefore, construe the extension of the right to jury trial in serious contempts as signalling the abandonment of the doctrine attributing special constitutional status to such proceedings. The Supreme Court has long recognized the function and practical impact of criminal contempts as well as the formal nature of the distinction between contempts and constitutionally defined "crimes." Still its decisions have uniformly adhered to that analytical construct. We may not depart from it at our choosing.

Nor does the reasoning of the cases relied upon by respondent otherwise persuade us that the holding of *Green* has been impliedly disapproved. The Court in *Bloom* balanced, on the one hand, the fundamental right of the accused to a jury trial as an independent check on arbitrary punishment, against the interests of the judiciary in independent, swift, and economic powers over disobedience.

■ In this case, indictment by grand jury would provide an additional check by another independent body of men, not against abusive imposition of punishment by an arbitrary judge, but against an undue trial. See Stirone v. United States, 361 U.S. 212, 217–218, 80 S.Ct. 270, 4 L.Ed.2d 252; Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed. 2d 1041. Though substantial, this right has repeatedly been held outside the ambit of "due process of law." Hurtado v.

California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232; see also, McNulty v. California, 149 U.S. 645, 13 S.Ct. 959, 37 L. Ed. 882; Hodgson v. Vermont, 168 U. S. 262, 18 S.Ct. 80, 42 L.Ed. 461; Bolln v. Nebraska, 176 U.S. 83, 20 S.Ct. 287, 44 L.Ed. 382; Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917; Lem Woon v. Oregon, 229 U.S. 586, 33 S. Ct. 783, 57 L.Ed. 1340; Gaines v. Washington, 277 U.S. 81, 48 S.Ct. 468, 72 L. Ed. 793; Beck v. Washington, 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98. The recent inclusion of jury trial within the Fourteenth Amendment's Due Process Clause in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, hardly suggests the necessity of reaching the same conclusion with respect to the right to indictment by grand jury. The two specific procedural institutions, their functions, and the interests which they serve, while related, are nonetheless capable of distinction. We can see no basis for anticipating possible re-examination of the status of the grand jury in the constitutional scheme. Cf. Morford v. Hocker, 394 F.2d 169 (9th Cir. 1968), certiorari denied, 392 U.S. 944, 88 S.Ct. 2329, 20 L.Ed.2d 1406; Henderson v. Cronvich, 402 F.2d 763 (5th Cir. 1968).

The extension of constitutional right to jury trial in serious contempts does not, moreover, indicate a rejection of the importance of considerations of judicial independence, efficiency and speed. Rather, in *Bloom* the Court recognized the importance of those factors, yet found them outweighed by the fundamental right sought and the otherwise unprotected interests guarded by an independent jury. 391 U.S. at p. 209, 24 S.Ct. 665. Provision for trial by jury largely nullifies the need for additional checks upon judicial power to punish contempt. The countervailing values need not be further sacrificed in order to protect the less compelling demand for protection against unfair trial.

Under these circumstances, we adhere to the holding of Green v. United States, 356 U.S. 165, 78 S.Ct. 632, that indictment by grand jury is not required in criminal contempt proceedings. We are mindful that obedience to the decisions of the Supreme Court may command cautious departure from narrow rulings.[4] Here, however, neither the holding of *Green* nor the reasoning of that decision has been sufficiently eroded to warrant our independent consideration of the merits of respondent's constitutional claim.

## II

Respondent next urges that the Notice and Rule to Show Cause did not adequately inform him of the "nature and cause of the accusation" as constitutionally required. See Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767.

■ In accordance with the dictates of Rule 42(b) of the Rules of Criminal Procedure, proceedings in this case were instituted by service upon respondent of a copy of the Notice and Petition for Rule to Show Cause as well as the Rule to Show Cause issued by the judge. The Notice and Petition set forth in ample detail the order allegedly violated, the means, time and number of alleged violations; it also requested that Bukowski be held in contempt of court for these actions. The accompanying Rule to Show Cause ordered respondent to appear on the date specified for hearing

4. See, e. g., Ferguson v. Skrupa, 372 U.S. 726, 731, 83 S.Ct. 1028, 10 L.Ed.2d 93; United States v. White, 405 F.2d 838, 847–848 (7th Cir. 1969), certiorari granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed. 2d 559; Rowe v. Peyton, 383 F.2d 709, 714 (4th Cir. 1967), affirmed, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 420; Tilton v. Missouri Pac. R. R. Co., 306 F.2d 870 (8th Cir. 1962), reversed, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590; Browder v. Gayle, 142 F.Supp. 707, 717 (3-judge district court, M.D.Ala.1956), affirmed per curiam, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114; see generally Kelman, The Force of Precedent in the Lower Courts, 14 Wayne L.Rev. 3 (1967); Note, The Attitude of Lower Courts to Changing Precedents, 50 Yale L.J. 1448 (1941).

and further informed him that the offense charged was violation of disobedience of the court's orders. The contents of the two documents clearly satisfied the constitutional requirements of notice as well as the specific processes of Rule 42(b) of the Rules of Criminal Procedure. See United States v. United Mine Workers of America, 330 U.S. 258, 297–300, 67 S.Ct. 677; Yates v. United States, 316 F.2d 718 (10th Cir. 1963).

Specifically, respondent asserts that the Notice was insufficient because it failed to specify the grade of the offense charged. Cf. United States v. Gordon, 253 F.2d 177, 180 (7th Cir. 1958). Strictly speaking, the nature of contempt defies ready classification in terms of "grades" of offenses. Since Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, however, gradations of criminal contempt have developed as a consequence of the distinctions between "serious" and "petty" offenses drawn for purposes of determining the right to a jury trial. See also Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162. An accused could not, therefore, be subject to serious punishment for criminal contempt without adequate prior information with which to exercise or waive his right to jury trial. Although there was no specification in the Notice or Rule to Show Cause concerning the "seriousness" of this contempt proceeding, the court designated the offense as "serious" and provided a jury trial upon respondent's request. Consequently, we can see no prejudice to respondent's fundamental rights, and no basis for invalidating his trial on that ground. Cf. United States v. United Mine Workers of America, 330 U.S. 258, 298, 67 S.Ct. 677.

### III

Respondent further assails the contempt prosecution in this case as tainted by allegedly improper use of the grand jury to obtain information for contempt proceedings and erroneous application of contempt powers to punish conduct otherwise liable to treatment as a misdemeanor.

Respondent's contention of grand jury abuse is without support in the record and without merit. Although prosecution of criminal contempt may follow from indictment or presentment of the grand jury (see, e. g., United States v. Sternman, 415 F.2d 1165 (6th Cir. 1969), certiorari denied, 397 U.S. 907, 90 S.Ct. 903, 25 L.Ed.2d 88; Carlson v. United States, 209 F.2d 209, 216–218 (1st Cir. 1954)), failure to pursue such course neither constitutes nor suggests impropriety. The grand jury's role as guardian against improper charge or prosecution of "infamous crimes" does not render abusive its inquiry into other federal crimes or prosecutions based upon evidence adduced during proper proceedings. The grand jury holds broad powers of inquiry into any conduct possibly violating federal criminal law. Hoffman v. United States, 341 U.S. 479, 485, 71 S.Ct. 814, 95 L.Ed. 1118; Sullivan v. United States, 348 U.S. 170, 173, 75 S.Ct. 182, 99 L.Ed. 101; cf. Homan Mfg. Co. v. Russo, 233 F.2d 547, 551 (7th Cir. 1956); United States v. Neff, 212 F.2d 297, 301 (3d Cir. 1954). It proceeds without need of any prior formal charge against any particular individual. Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652.

"It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. Hendricks v. United States, 223 U.S. 178, 184, 32 S.Ct. 313, 56 L.Ed. 394." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979.

██ There is no hint in this record that the grand jury was conducting inappropriate investigations or that there was subversion of other policies of the law by utilizing evidence uncovered by that body in this prosecution. That no indictment for contempt was returned or even sought by the Government where none was necessary to prosecution certainly "is no reflection on the integrity of the prosecution." United States v. Procter & Gamble, 356 U.S. 677, 683, 48 S.Ct. 983, 987, 2 L.Ed.2d 1077.

██ Equally meritless is the assertion that the Government has improperly employed contempt as a means of circumventing the limits of punishment for conduct such as respondent's under 18 U.S.C. § 1504.[5] Whether or not that Section may be applied against those already under judicial orders, such as jurors, its language clearly limits its applicability to communications in writing. Moreover, the prohibition contained in that Section at best covers only a small portion of the allegedly improper conduct attributed to respondent.

## IV

██ Respondent also urges that his conviction be reversed due to the refusal of the judge to recuse himself. Although no affidavit of bias and prejudice was filed by respondent in support of his motion, he nevertheless contends that the judge should have disqualified himself automatically and that bias and prejudice denied respondent due process. We find the arguments meritless.

The contempt did not charge disrespect to or criticism of the presiding judge requiring disqualification under Rule 42(b) of the Rules of Criminal Procedure, note 2 *supra*. Neither participation in the *Durovic* trial, nor the judge's initiation of contempt proceedings by issuing the formal Rule to Show Cause, nor the nature of the contempt charged here suggests a need for a separate judge. Nilva v. United States, 352 U.S. 385, 396, 77 S.Ct. 431, 1 L.Ed.2d 415; Ungar v. Sarafite, 376 U.S. 575, 584–588, 84 S.Ct. 841, 11 L.Ed.2d 92. Unlike the decisions relied upon by respondent, the trial below was not summary but was held before an impartial jury in a public proceeding. Cf. In Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; In Re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942; Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11; Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989.

Respondent has failed to present any evidence of prejudice or bias supporting a contention that the trial judge should have stepped down. The judge's views regarding the guilt or innocence of defendants in the *Durovic* trial does not support the inference that he brought a jaundiced approach to an entirely different charge against an entirely different individual. Moreover, his remarks concerning the offense and character of the defendant, made after return of the verdict by the jury and at the time of sentencing, are similarly inadequate indicia of bias or prejudice during this trial. Cf. United States v. Bolden, 355 F.2d 453, 456 (7th Cir. 1965), certiorari denied, 384 U.S. 1012, 86 S.Ct. 1919, 16 L.Ed.2d 1018.

## V

Respondent's next contention is that the evidence failed to prove the allegations of the Rule to Show Cause charging Bukowski with contempt beyond a reasonable doubt. We have reviewed the evidence in the light most favorable to the Government (Glasser v. United

---

5. 18 U.S.C. § 1504 is entitled "Influencing juror by writing" and provides:
   "Whoever attempts to influence the action or decision of any grand or petit juror of any court of the United States upon any issue or matter pending before such juror, or before the jury of which he is a member, or pertaining to his duties, by writing or sending to him any written communication, in relation to such issue or matter, shall be fined not more than $1,000 or imprisoned not more than six months, or both."

States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680), and we conclude that it sufficiently established the charges.

Proof of the allegations relating to the articles which appeared in the "Butcher Workman" came primarily from the testimony of Robert Collins, a reporter for the *St. Louis Post-Dispatch,* the St. Louis, Missouri, newspaper. He testified that on May 4, 1966, approximately 4 months after the conclusion of the *Durovic* trial, he privately interviewed Bukowski. At that time, respondent informed Collins that he had read the articles on Krebiozen which appeared in the "Butcher Workman" during the course of the trial. Bukowski admitted that he knew his actions violated the court's directive. He explained that the magazine came into his home and that he read the articles. He also admitted that he " 'discussed the articles with other members of the jury,' " specifically, Foreman Adolph Beranek.

Respondent argues that his confession of contemptuous conduct to Collins may not be relied upon to establish guilt because it lacks adequate independent corroboration. Before considering the accuracy of that assertion, however, we must decide whether the requirement of corroboration of confessions and admissions obtains in criminal contempts as well as statutory cimes.

The rule is well settled in federal criminal law that "conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." Wong Sun v. United States, 371 U.S. 471, 488–489, 83 S.Ct. 407, 418, 9 L.Ed.2d 441. The rule is intended to prevent "errors in convictions based upon untrue confessions alone" (Warszower v. United States, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876) by ensuring "police investigations which extend beyond the words of the accused." Smith v. United States,

348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192. Admissions and confessions, persuasive of guilt to a jury, are too frequently unreliable or inconclusive themselves:

"In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. Admissions, retold at a trial, are much like hearsay, that is, statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross-examination." Opper v. United States, 348 U.S. 84, 89–90, 75 S.Ct. 158, 162–163, 99 L.Ed. 101.

Considerations akin to the privilege of the accused against self-incrimination and notions of best evidence also support the rule.[6]

The requirement that confessions and admissions be corroborated in testing the sufficiency of the evidence supporting convictions should find equal application in cases of criminal contempt. It has long been held that

" * * * in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797; see Bloom v. Illinois, 391 U.S. 194, 204–205, 88 S.Ct. 1477, 20 L.Ed.2d 522.

The conviction that the Government should not declare and punish a crime solely upon the strength of statements of the accused may be considered a facet of proof beyond reasonable doubt in federal courts.[7] Furthermore, the stand-

---

6. On the rationale and application of the requirement of corroboration generally, see Developments in the Law—Confessions, 79 Harv.L.Rev. 938, 1072–1084 (1966); Note, Proof of the Corpus Delicti Aliunde the Defendant's Confession, 103 U.Pa.L.Rev. 638 (1955).

7. The rule's nature, rationale, and history suggest that the requirement states a test

ard for proof of guilt assumes the competency of the evidence considered in testing its sufficiency. We see no grounds for departing in contempts from established federal rules regulating the competency of evidence in criminal trial. Cf. United States ex rel. Porter v. Kroger Grocery & Baking Co., 163 F.2d 168, 172–173 (7th Cir. 1947); In re Floersheim, 316 F.2d 423, 426 (9th Cir. 1963). Courts certainly have no interest in punishing nonexistent contempts or convicting accused contemnors upon questionable proof. Efficient and consistent administration of justice, as well as the policies supporting the corroboration requirements itself, call for its application, at least where serious penalties are at stake and the constitutional right to jury trial attaches. Cf. Smith v. United States, 348 U.S. 147, 153–154, 75 S.Ct. 194; Bloom v. Illinois, 391 U.S. 194, 204–205, 88 S.Ct. 1477.

▇▇▇ The fundamental requirement of corroboration should also apply whether the statements of the accused have allegedly been made to investigating officials or private citizens. The Supreme Court has chosen to give broad scope to

both the function and usage of the rule (see, *e. g.*, Opper v. United States, 348 U.S. at pp. 89–92, 75 S.Ct. 158; Smith v. United States, 348 U.S. at pp. 153–156, 75 S.Ct. 194), and the considerations underlying the requirement are apparent even where the recipient is a private individual.[8] This is especially true where, as here, the statements comprise a complete confession of guilt uttered in strict privacy.

▇▇▇ Corroboration in federal courts does not, however, entail independent proof of each element of the offense charged. The purpose of corroboration is to ensure the reliability of the confession or admission of the accused. In Opper v. United States, 348 U.S. at p. 93, 75 S.Ct. at p. 164, therefore, the Court indicated that the purpose called only for

"* * * the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. * * It is sufficient if corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth."

---

of the sufficiency of proof rather than merely an evidentiary rule governing "competence" of a confession or admission. See generally, Developments in the Law—Confessions, 79 Harv.L.Rev. 938, 1072–1084 (1966); Note, Proof of the Corpus Delicti Aliunde the Defendant's Confession, 103 U.Pa.L.Rev. 638 (1955). Such statements, at least under the federal rules, are "competent" and admissible against the defendant. See Opper v. United States, 348 U.S. at p. 90, 75 S.Ct. 158; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202.

Regardless of the characterization of the rule, it is not clear whether it need be treated as a feature of "Due Process." The Supreme Court has only held that due process of law requires convictions by the standard of proof beyond reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. It is not clear to what extent the Constitution's burden of proof of guilt includes observance of federal rules of sufficiency of proof or even fundamental evidentiary law. All individual federal statements of sufficiency of evidence and evidentiary law

need not be swept along as part and parcel of the standard itself. Cf. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; but see Brinegar v. United States, 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879. A strong argument from history and policy might well be made that some form of the corroboration rule should be considered binding as an element of "due process" of law. However, we do not rest our conclusion in this case upon any constitutional basis.

8. See Developments in the Law—Confessions, 79 Harv.L.Rev. 938, 1079 (1966). We find this consistent with the suggestion in Smith v. United States, 348 U.S. at p. 155, note 3, 75 S.Ct. at p. 198, that "[a]dmissions given under special circumstances, providing grounds for a strong inference of reliability, may not have to be corroborated." The requirement must be flexibly invoked, and should not apply with the same rigor to all statements regardless of the differing content and circumstances of their utterance.

This may be accomplished by evidence directly bearing upon the material matters admitted. Alternatively, the Supreme Court has indicated that "one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." Smith v. United States, 348 U.S. at p. 156, 75 S.Ct. at p. 199. This may be accomplished by producing substantial evidence of the commission of the crime charged, even though separate corroboration of the specific elements of guilt admitted by the accused is lacking. United States v. Calderon, 348 U. S. 160, 168–169, 75 S.Ct. 186; cf. Smith v. United States, 348 U.S. at pp. 158–159, 75 S.Ct. 194.

■ In the case before us, sufficient circumstantial corroboration of respondent's violation of court orders is present to support the truth of his statements to Collins. The evidence indicated that Bukowski had access to the articles and apparently brought them to the jury room. The magazine "Butcher Workman" is the official publication of the union to which respondent belongs and is sent to its members. During the course of the Durovic trial, issues of the magazine on repeated occasions carried stories and editorials favorable to Krebiozen. Juror Frank J. Klyczek testified that he saw the July-August 1965 issue of the magazine in the jury room. Another juror, Lois Clark, testified that she recognized a page from an article on Krebiozen appearing in the October 1965 issue of the magazine which she believed she saw in the jury room or at lunch.

In addition to these direct suggestions of guilt, Collins' narration of respondent's interview finds incidental corroboration. Collins testified that Bukowski recalled a specific article in the magazine whose substance he related to Collins. Such an article appeared in one issue of the "Butcher Workman." Bukowski informed Collins that he had dis-

cussed the articles with Adolph Beranek who was the foreman of the jury at the Durovic trial. Beranek himself admitted telling Collins that he "cheated a little in the jury room." Both Bukowski and Beranek attended a party given by the acquitted defendants shortly after the trial ended.

Lending further credence to the confession, as well as sufficiently supporting an independent violation of judicial orders, is the evidence of respondent's attendance at the union convention during the trial. The Government showed that respondent registered at the same motel at which the union was holding its convention. He was further placed outside the convention chambers by a union member. The clear inference from the evidence is that he attended the convention and participated in its activities, which included a speaker and film on the subject of Krebiozen and the adoption of a pro-Krebiozen resolution.

The final element of proof corroborated respondent's admissions that he failed to inform the district court of his actions. Eugene Bissell, Deputy United States Marshal, who had been assigned to the Durovic trial, testified that Bukowski never informed him of matters concerning the convention or the magazine articles.

This evidence was clearly sufficient to prove respondent's repeated and wilful disregard of the trial court's instructions regarding conduct of jurors. It was, we find, sufficient to warrant an affirmative jury verdict on each charge specified in the Rule to Show Cause.

## VI

■ The court's instructions to the jury are also assailed as erroneous in two particulars. First, it is claimed that the judge violated Rule 30 of the Federal Rules of Criminal Procedure by instructing the jury in another way than the court had informed the parties it would.[9]

---

9. Rule 30 of the Federal Rules of Criminal Procedure prescribes:

"At the close of the evidence or at such earlier time during the trial as

Our review of the colloquy on instructions together with the court's charge to the jury reveals no substantial variance between the information supplied respondent and the actual charge. The court below twice announced that it planned to give the Government's instruction stating in the disjunctive the specific contempts charged in the Rule to Show Cause. At the same time, the court indicated that it would make "some changes in the language to conform accurately with the allegations in the petition." The remarks of counsel and the court at that time demonstrate that all concerned were aware that the court had rejected respondent's theory of criminal liability in favor of the substance of the Government's charge. The instruction actually given to the jury did not, in substance, vary from the course indicated by the judge. The variations in language forecast by the judge at the colloquy were minimal and in no way indicated a departure from the theory upon which the Government founded its case. We find no deception of counsel in the court's conduct.

■■■■ We also reject the contention that the court failed to instruct the jury as to respondent's defense that the directive given jurors in the *Durovic* trial was unlawful as including a general prohibition on all reading throughout the duration of that prosecution. Even

the invalidity of an order need not provide a defense against contempt based upon violation of that order. See United States v. United Mine Workers, 330 U. S. 258, 293–294, 67 S.Ct. 677, 91 L.Ed. 884; Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210. Even assuming the existence of such a defense, however, it would involve a pure question of law whose determination is cognizable by the court and not the jury. See Sparf v. United States, 156 U.S. 51, 102, 15 S.Ct. 273, 39 L.Ed. 343; Berra v. United States, 351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013. Moreover, the asserted defense was utterly without foundation in fact. The judge's orders to the jury were plainly directed only toward information and news relating to the issues then at trial. Cf. Bird v. United States, 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100; United States v. Bradley, 426 F.2d 148, 150 (7th Cir. 1970). Finally, the instruction actually requested failed itself clearly to state the nature of the defense and was substantially duplicated by the court's charge.[10]

## VII

The final objections to the conduct of the trial charge that the court's evidentiary rulings and the conduct of both the prosecutor and the judge deprived respondent of a fair trial.

---

the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury."

10. Respondent's submitted instruction directed the jury:

"It is the theory of the Respondent that the words spoken by [the judge] to the jurors in the case of United States v. Durovic, *et al.*, did not constitute a lawful order and, therefore, the Respondent could not be guilty of contempt. If the jury finds that those words did not constitute a lawful order of the Court, the jury must find the Respondent not guilty."

The court's charge to the jury included among the necessary elements the finding:

"First, that there was a lawful order of the court which directed the respondent to do or not to do some act or acts."

We find no denial of due process in these matters. The evidentiary rulings involved testimony concerning the reputation of the accused and the meaning of the court's "order" to the jurors of the *Durovic* trial. The limitations imposed upon respondent's character witnesses were within the discretion of the trial judge under Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168. Likewise, the court below correctly excluded the evidence offered ostensibly to show that the "order" given to the *Durovic* jurors was not intended as binding. The record discloses that the actual offer involved irrelevant and inconsequential material taken from instructions to an entirely different jury in an entirely different proceeding.

The alleged misconduct of the judge similarly fails to endure scrutiny. Beyond question, the neutrality of the trial judge is of critical importance to the fairness of a criminal trial. His influence upon the jury is great, and he must carefully guard against prejudicial comments which might create even the appearance of partiality. United States v. Levi, 177 F.2d 833, 835–836 (7th Cir. 1944); United States v. Carmel, 267 F.2d 345, 349–350 (7th Cir. 1959); accord, United States v. Ah Kee Eng, 241 F.2d 157, 161 (2d Cir. 1957); United States v. Cassiagnol, 420 F.2d 868, 878–879 (4th Cir. 1970), certiorari denied, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654; Blumberg v. United States, 222 F.2d 496, 501 (5th Cir. 1955); United States v. Ornstein, 355 F.2d 222 (6th Cir. 1966); Young v. United States, 120 U.S.App.D.C. 312, 346 F.2d 793 (1965). This principle extends to the relations between the court and counsel. Cf. United States v. Scott, 257 F.2d 374, 377 (7th Cir. 1958); United States v. Coke, 339 F.2d 183, 185 (2d Cir. 1964).

Contrary to respondent's claims, the trial judge did not abuse his discretion in informing the jurors on *voir dire* of his role in the *Durovic* trial or the fact that he had "signed" the Rule to Show Cause. These remarks were an appropriate part of the court's pretrial inquiry into the qualifications of prospective jurors. Cf. Dennis v. United States, 339 U.S. 162, 168, 70 S.Ct. 519, 94 L.Ed. 734; United States v. Daily, 139 F.2d 7 (7th Cir. 1943); Grogan v. United States, 394 F.2d 287, 291 (5th Cir. 1967), certiorari denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100. The judge clearly explained the formal significance of the Rule to Show Cause, and he adequately instructed the jurors that the charges contained in that document did not constitute evidence. Garrison v. United States, 353 F.2d 94, 96 (10th Cir. 1965); Parr v. United States, 255 F.2d 86, 89 (5th Cir. 1958), certiorari denied, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64. We see no reason to disregard the jurors' own response to the court's inquiry.

Likewise, we find no prejudice in the expression of displeasure by the judge in granting respondent's request for a continuance. These remarks were within the province of the judge in light of his responsibility to conduct an orderly and expeditious proceeding. They disclose no unfairness or partiality against the respondent or his attorney. Cf. Posey v. United States, 416 F.2d 545, 555 (5th Cir. 1969), certiorari denied, 397 U.S. 946, 90 S.Ct. 965, 25 L.Ed.2d 127; United States v. Gleeson, 411 F.2d 1091, 1096 (10th Cir. 1969).

Lastly, the prosecutor's brief closing argument remark about demonstrations falls far short of creating an atmosphere of prejudice imperiling dispassionate judgment by the jury. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Freeman, 167 F.2d 786, 791 (7th Cir. 1948), certiorari denied, 335 U.S. 817, 69 S.Ct. 37, 93 L. Ed. 372; United States v. Ramos, 268 F.2d 878, 880 (2d Cir. 1959). At most, it amounted to irrelevant oratory, harmless to this trial. Cf. United States v. Fidanzi, 411 F.2d 1361, 1362 (7th Cir. 1969), certiorari denied, 396 U.S. 929, 90 S.Ct. 265, 24 L.Ed.2d 227; United States v. Hoffman, 415 F.2d 14, 21 (7th

Cir. 1969), certiorari denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423.

## VIII

■■■■■■ Having reviewed the determination of respondent's guilt, we turn to consider the propriety of the 3-year sentence imposed by the district judge. Punishment of criminal contempt should reflect the "least possible power adequate to the end proposed." Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242. Appellate courts bear "special responsibility" for preventing abuse of the contempt power, and this Court has the power in appropriate circumstances to revise sentences inflicted upon contemnors whether trial has been by judge or jury. Green v. United States, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672; Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629; United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677; United States ex rel. Robson v. Malone, 412 F.2d 848 (7th Cir. 1969); Schnurman v. United States, 126 U.S.App.D.C. 315, 379 F.2d 92 (1967); United States v. Conole, 365 F.2d 306 (3d Cir. 1966), certiorari denied, 385 U.S. 1025, 87 S.Ct. 743, 17 L. Ed.2d 673. Pertinent to this inquiry are

"the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future." United States v. United Mine Workers of America, 330 U.S. at p. 303, 67 S.Ct. at p. 701.

■■■■ The range of conduct set forth in the Petition for Rule to Show Cause certainly stated flagrant disregard of repeated judicial orders regarding most sensitive and important matters which would warrant harsh punishment.[11] On the other hand, we conclude that impris-

onment for 18 months adequately punishes such conduct and that a greater sentence would be excessive. Cf. United States ex rel. Robson v. Malone, 412 F.2d 848 (7th Cir. 1969).

The judgment of conviction is affirmed as modified.

---

11. Cf. 18 U.S.C. § 1503 which prescribes punishments of up to $5,000 fine and five years' imprisonment for analogous misconduct.